Ex parte Thomas Keith
HOWELL, Relator.

No. 01–92–01148–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 3, 1992.

Maurice Bresenhan, Jr., Houston, for appellant.

Martha C. Pitkin, Houston, for appellee.

Before OLIVER–PARROTT, C.J., and O'CONNOR and WILSON, JJ.

## OPINION

OLIVER–PARROTT, Chief Justice.

Relator, Thomas Keith Howell, was found in contempt for failing to pay child support and ordered confined for 180 days in the Harris County jail. He brings this original habeas corpus proceeding to challenge the order of commitment dated November 12, 1992.

Dana Lynn Howell and Thomas Keith Howell divorced on July 21, 1988.[1] The fourth page of the final decree of divorce provided:

IT IS ORDERED AND DECREED that Thomas Keith Howell shall pay to Dana Lynn Howell child support of $250.00 per month, in two installments per month of $125.00 each, with the first installment being due and payable on July 1, 1988, and a like installment being due and payable on each 1st and 15th day of each month thereafter until the date of the earliest occurrence of one of the following events:

. . . .

IT IS ORDERED AND DECREED that all payments shall be made through: Harris County Probation Department, Child Support Division, 1115 Congress, Houston, Texas 77002 and shall bear cause number 88–23752, and thereafter promptly remitted to the Managing Conservator for the support of the minor child. Payments shall be in the form of cashier checks or money order only.

The final decree of divorce identified Kristen Blair Howell as the child of the marriage and Dana Lynn Howell as her managing conservator.

According to exhibit A of the order of commitment, relator made no payments through the Child Support Division from August 1, 1988 through August 15, 1992. The exhibit is four pages long and details the amount due on each date (totaling $12,250) and the amount paid ($0). However, the order of commitment itself gives relator credit for $3,675 in payments made outside of the Child Support Division.

At the hearing on November 12, Mrs. Howell testified that exhibit A was correct except that she had received directly from relator a payment of $75 and one for $150. She did not recall any other payments. Relator introduced 20 cancelled checks payable to Mrs. Howell from his parents. The checks had various specific dates from 1988 through 1992 and totalled $1,350. He testified that he had made direct payments to

Mrs. Howell at specific months in 1989 through 1992, which totalled $2,300. Additionally, relator indicated that his parents had paid $1,247 in checks to stores and insurance companies on behalf of Kristen. Copies of these checks are not in the record. The credit granted by the trial court comes close to equalling $225 (the amount Mrs. Howell said she directly received from relator), plus $1,350 (the amount corresponding to the checks from relator's parents), plus $2,300 (the amount relator said he directly paid to Mrs. Howell). Neither party complains of the amount of credit actually allowed.

Relator makes eight complaints about the order of commitment.

■ First, he contends the order is void and unenforceable because the divorce decree is not attached as exhibit B as stated on the face of the order, and the exhibit B that is attached makes no reference to the Child Support Division. He also states the divorce decree was never received into evidence at the hearing. The order of commitment before this Court contains a certified copy of the divorce decree as exhibit B that refers to the Child Support Division. Relator cites to no authority for the proposition that the divorce decree must be introduced into evidence. We find no merit to relator's first complaint.

■ Relator contends in his second complaint that the order of commitment states only a lump sum amount due and fails to state specifically and with particularity the provisions of the divorce decree for which enforcement was sought and a time, date, and place of each occasion constituting a violation of the divorce decree. The order reads in part:

has failed and refused to pay child support as heretofore ordered in an amount of 12,250.00 as set forth in Exhibit A, minus $3,675.00 credit granted for payments made outside of the Harris County Child Support Office, yielding a net child support due of $8575.00.

1. *In the Matter of the Marriage of Dana Lynn Howell and Thomas Keith Howell and in the*

*Interest of Kristen Blair Howell,* No. 88–23752 (Dist.Ct. of Harris County, 245th Dist. of Texas).

Exhibit A consists of four pages with three columns reading "DATE DUE," "AMOUNT DUE," AND "AMOUNT PAID THRU Harris County Child Support." The dates start with August 1, 1988, and cover the first and fifteenth of each month through August 15, 1992. The "Amounts Paid" are $0. There is no credit indicated on the exhibit for payments made directly by relator or his parents to Mrs. Howell. The credit is listed only as a lump sum amount on the face of the order.

Section 14.33(a) of the Family Code provides:

> An enforcement order shall contain findings setting out in ordinary and concise language the provisions of the final order, decree, or judgment for which enforcement was sought, the acts or omissions that are the subject of the order, the manner of noncompliance, and the relief awarded by the court. *If the order imposes incarceration ... an enforcement order must contain findings setting out specifically and with particularity or incorporating by reference the provisions of the final order, decree, or judgment for which enforcement was sought and the time, date, and place of each occasion on which the respondent failed to comply* with the provision and setting out the relief awarded by the court.

TEX.FAM.CODE ANN. § 14.33(a) (Vernon Supp.1992) (emphasis added).

For his argument, relator relies on *Ex parte Greene,* 788 S.W.2d 724 (Tex.App.—Houston [14th Dist.] 1990, orig. proceeding) and *Ex parte Boykins,* 764 S.W.2d 590 (Tex.App.—Houston [14th Dist.] 1989, orig. proceeding). We find *Greene,* a case of criminal contempt, distinguishable because only a total arrearage amount was given; there was no itemization at all. *Id.* at 726. In *Boykins,* a case of civil contempt, the enforcement order specified only total arrearages of $8,800, although the show cause order contained an itemized list of nonpayments totalling $12,400. *Id.* at 591, 592. The statement of facts indicated that certain payments had been made by the relator directly to his former wife, and the trial court gave a credit for these pay-

ments. The Fourteenth Court of Appeals found that providing only the total arrearage amount in the enforcement order did not comply with the specificity requirements of section 14.33(a), even though it noted that the relator had caused the problem by failing to pay through the Child Support Division and failing to keep records of any direct payments he made. *Id.* at 592. In summary, even *Boykins* is distinguishable from the case before us.

An enforcement order does not comply with section 14.33(a) if it only lists a total arrearage amount. *Ex parte Holland,* 790 S.W.2d 568 (Tex.1990, orig. proceeding); *Ex parte Alford,* 827 S.W.2d 72, 74 (Tex. App.—Houston [1st Dist.] 1992, orig. proceeding). An enforcement order must set out the time, date, and place of each occasion on which the relator *failed* to comply with an order of support. The order of commitment before us, in exhibit A referenced in and attached to it, sets out the time, date, and place of each occasion on which relator *failed* to make child support payments. It does not contain only the total arrearage amount. The fact that relator was also given credit for amounts paid by him and his parents to his former wife does not mean that he did not *fail* to make the child support payments described in exhibit A. *See Ex parte Waldrep,* 783 S.W.2d 332, 333 (Tex.App.—Houston [14th Dist.] 1990, orig. proceeding) (table cited in the order specifically stated each date of each nonpayment; payments made directly to ex-wife on dates other than those ordered does not excuse nonpayment on dates on which obligated to make payments in manner specified for making such payments). Accordingly, we overrule relator's second complaint.

In his third complaint, relator argues his confinement is illegal because the divorce decree is ambiguous, requiring him to pay Dana Lynn Howell child support when she is emancipated and not eligible to receive child support. We have reviewed the divorce decree, the pertinent provisions of which have been set forth above, and find this argument without merit.

In his fourth point, relator claims his confinement is illegal because exhibit A attached to the order of commitment makes no reference to a place of payment. We find this contention without merit because exhibit A shows "Amount Paid Thru Harris County Child Support."

■ In his fifth point, relator complains he is illegally confined because he was denied a right to trial by jury and did not affirmatively waive that right.

Section 21.002(b) of the Government Code provides that punishment for contempt of court is a fine of not more than $500 or confinement in the county jail for not more than six months or both. TEX. GOV'T CODE ANN. § 21.002(b) (Vernon 1988). Contempt is classified as "constructive" when it occurs outside the presence of the court. *Ex parte Werblud*, 536 S.W.2d 542, 546 (Tex.1976, orig. proceeding). Contempt is characterized as "criminal" when the sentence is not conditioned upon some promise of future performance because the contemnor is being punished for some completed act that affronted the dignity and authority of the court. *Werblud*, 536 S.W.2d at 545. Relator's confinement here does not exceed six months, and his contempt is of the criminal variety.

Both the Supreme Court and the Texas Supreme Court have held that in criminal contempt, a contemnor is entitled to a jury trial if the offense is "serious." *Muniz v. Hoffman*, 422 U.S. 454, 475–77, 95 S.Ct. 2178, 2190–91, 45 L.Ed.2d 319 (1975); *Werblud*, 536 S.W.2d at 546–47. In general, where the offense is punishable by imprisonment of not more than six months, the offense is not serious and there is no entitlement to a jury trial. *Muniz*, 422 U.S. at 476, 95 S.Ct. at 2190; *Werblud*, 536 S.W.2d at 547; *Ex parte Lopez*, 710 S.W.2d 948, 955 (Tex.App.—San Antonio 1986, orig. proceeding); *see Ex parte Sproull*, 815 S.W.2d 250 (Tex.1991, orig. proceeding) (a charge for which confinement may exceed six months is serious); *Ex parte Mathis*, 822 S.W.2d 727, 731 (Tex.App.—Tyler 1991, orig. proceeding) (confinement *exceeding* six months in jail serious; offense serious where relator punished for 21 violations of

child support orders with six months in jail and $500 fine per violation). In *Sproull*, 815 S.W.2d at 250, our supreme court specifically held that a charge for which confinement may exceed six months is serious, and the trial court has an obligation to inform the defendant of his right to a jury trial and get an affirmative waiver on the record from the defendant before proceeding without a jury. A silent record will yield no presumption of waiver. *Id.; Ex parte Griffin*, 682 S.W.2d 261, 262 (Tex. 1984).

Mrs. Howell, the real party in interest, did not seek confinement in excess of six months; therefore, pursuant to *Sproull*, no jury trial was required. Relator argues that any incarceration is serious, and a jury trial must be available. Although we do not take confinement in jail cavalierly, the current position of the supreme court, as expressed in *Sproull*, requires our disagreement with this position.

We conclude that relator was not entitled to a jury trial and overrule his fifth point.

■ In his sixth complaint, relator asserts he is illegally confined because the divorce decree required him to take action, i.e., pay child support prior to the effective date of the decree. The divorce decree was signed on July 21, 1988. Under the decree, child support was to begin on July 1, 1988. However, the order of commitment does not hold relator liable for any child support until August 1, 1988. We note that in *Ex parte Ballard*, 632 S.W.2d 660, 661 (Tex. App.—Tyler 1982, orig. proceeding), the relator was held in contempt for activities done *before* the date of the decree. We find the sixth complaint without merit.

■ In his seventh point, relator contends he is illegally confined because the evidence is legally and factually insufficient to establish that he willfully violated the divorce decree. He points to his testimony that he thought he had a verbal agreement with his former wife that, notwithstanding the terms of the decree, she would accept what he could pay when he could pay it. However, Mrs. Howell testified under cross-examination as follows:

Q: At that time, then you don't agree one way or another or you don't remember one way or another whether you had any agreement with Mr. Howell concerning the nonpayment of support?

....

A: I do not agree.

Q: Are you saying there's no agreement?

A: No verbal agreement if that's what you are after.

Q: There was none?

A: None.

We do not have jurisdiction to weigh the evidence adduced in a contempt proceeding; we may only determine if the court's contempt findings are so completely without evidential support as to render the court's judgment void on the ground it deprives the relator of due process. *Ex parte Helms,* 152 Tex. 480, 259 S.W.2d 184, 186 (1953, orig. proceeding); *Ex parte Karr,* 663 S.W.2d 534, 537 (Tex.App.—Amarillo 1983, orig. proceeding). Based on the statement of facts, we cannot say the order of commitment is without support in the evidence. We overrule relator's seventh point.

■ Relator argues in his eighth point that there is no evidence he was ever given notice of the entry of the divorce decree; therefore, at a minimum, his violation was not willful.

The signature of relator appears on the divorce decree; there is no contention that the signature is not truly his. Under cross-examination, Mrs. Howell testified:

Q: At the time this divorce was obtained, your ex-husband—sometimes I may slip up and say husband—was he represented by Counsel?

A: No, he was not.

Q: At the time the divorce was obtained, did you bring the Decree to him and ask him to sign it?

A: I believe I did, yes.

On direct examination, relator testified as follows:

Q: Mr. Howell, at the time the divorce was granted, were you represented by Counsel?

A: No, sir, I wasn't.

Q: Okay. After you got the divorce and down to the day you retained me, did you ever confer with an attorney about the significance of that document that you had signed?

A: No, I didn't.

Q: Were you in court when the Decree was signed and entered?

A: No, I wasn't.

Q: At the time you entered or signed that particular document, did you have any conversations with your ex-wife ... about the child support provision?

A: Yes sir, I did. I just had another child then, and I made an understanding with her I would pay her what I could. And she said that was fine not to worry about it.

*When I received a payment booklet from the child support, then I called; and again she said to pay what could and not to worry about the amount stated by the Court.*

(Emphasis added.) The record shows that relator had notice of the divorce decree. He did not argue to the contrary before the trial court. We overrule relator's eighth point.

Because we overrule all of relator's complaints, we deny him habeas corpus relief and order him remanded to the custody of the Sheriff of Harris County to complete the terms of the order of commitment dated November 12, 1992, signed by the Judge of the 245th District Court of Harris County, Texas, in cause number 88–23752.