**In re the Honorable Bonnie REED.**

**Ancillary to John Michael OJEDA**

**v.**

**The Honorable Bonnie REED.**

**No. 04–95–00104–CV.**

Court of Appeals of Texas,
San Antonio.

April 25, 1995.

John A. Longoria, Miguel Rodriguez, San Antonio, for appellant.

Kevin M. Warburton, Brad L. Sklencar, Sessions, Sessions, Sklencar & Warburton, L.C., San Antonio, for appellee.

## OPINION
Before the Court en banc.

PER CURIAM.

This is a case of contempt stemming from the refusal of a sitting county court at law judge to obey the direct order of a court of appeals.

## I. CHRONOLOGY

On February 17, 1995, John Michael Ojeda filed a motion for leave to file a petition for writ of mandamus seeking relief from the trial court's refusal to grant his motion for a legislative continuance pursuant to section 30.003 of the Civil Practice and Remedies Code. On that same date, this court granted leave to file the petition for writ of mandamus, granted Ojeda's motion for immediate temporary relief, and ordered that the proceedings below be stayed.

After being informed that the Honorable Bonnie Reed, who was presiding over the proceedings against Ojeda, had declared our order "moot," this court issued an amended order specifically ordering as follows:

> The Honorable Bonnie Reed, Judge of County Court at Law No. 9 of Bexar County, Texas, is hereby ORDERED to IMMEDIATELY CEASE AND DESIST from engaging in any further proceedings in the cause styled *The State of Texas v. John Michael Ojeda*, cause numbers 569072 and 574180, currently pending in County Court at Law No. 9 of Bexar

County, Texas. This order is to be immediately complied with regardless of what stage the proceedings are in and regardless of whether any or all evidence has been introduced. This order is to take effect immediately and shall be in force until further orders of this court.

Judge Reed did not stop the proceedings upon receipt of this order, but proceeded to charge the jury and allow the attorneys to present argument. The jury then deliberated until approximately 7:30 that evening. The following day, Saturday, February 18, the jury resumed its deliberations and returned one verdict of conviction and one verdict of acquittal. Judge Reed then proceeded with the punishment phase, which resulted in the jury's recommendation of probation.

On February 21, 1995, John Michael Ojeda, by and through his attorneys of record, John A. Longoria and Miguel Rodriguez, filed a verified motion to hold the Honorable Bonnie Reed in contempt and a motion for sanctions, alleging that the Honorable Bonnie Reed refused to obey the amended order quoted above and proceeded with the trial in direct violation of that order.

On March 1, 1995, this court ordered the Honorable Bonnie Reed to appear before the Honorable John F. Onion, Jr.[1] on March 17, 1995, at 9:00 a.m. in the courtroom of the Fourth Court of Appeals, 300 Dolorosa, Suite 3200, San Antonio, Texas to answer a charge of criminal contempt, to-wit: that the Honorable Bonnie Reed did fail to comply with the amended order issued by this court on February 17, 1995 ordering that she immediately cease and desist from engaging in any further proceedings in the case styled *The State of Texas v. John Michael Ojeda*, cause numbers 569072 and 57418 then proceeding in County Court at Law Number Nine of Bexar County, Texas. Shane Phelps and John Klassen, Assistant Attorneys General of the State of Texas, having been duly appointed

---

1. The Honorable John F. Onion, Jr. was assigned by the Texas Supreme Court as a temporary member of this court on February 22, 1995. On March 1, 1995, this court assigned Judge Onion to perform the duties of a master in the present case.

by this court [2], appeared and presented evidence in support of the motion for contempt. Judge Reed appeared in person and through counsel and presented evidence on her own behalf.

Pursuant to this court's order of March 1, 1995, the Honorable John F. Onion, Jr. filed findings of fact with this court on March 27, 1995.[3] A copy of those findings was provided to counsel for Judge Reed. Two volumes of statement of facts from the March 17, 1995 hearing were filed on March 23 and 27, 1995.

On March 30, 1995, this court ordered that the Honorable Bonnie Reed appear in the courtroom of the Fourth Court of Appeals on the 11th day of April, 1995 at 1:30 p.m., to show cause why she should not be held in contempt of court for failing to immediately cease and desist from engaging in any further proceedings in the cause styled *The State of Texas v. John Michael Ojeda*, cause numbers 569072 and 574180, then pending in County Court at Law No. 9 of Bexar County, Texas, as ordered by this court in its amended order issued February 17, 1995.

On April 11, 1995, Judge Reed appeared in person and through counsel and announced ready. Assistant Attorneys General Shane Phelps and John Klassen also appeared and announced ready. After examining the evidence and the findings of fact filed by the Honorable John F. Onion, Jr., and after hearing the arguments of counsel, this court found that (1) this court has jurisdiction of the proceeding; (2) the motion for contempt filed herein is in all respects proper and sufficient; (3) the Honorable Bonnie Reed was afforded due and proper notice of the evidentiary hearing before the Honorable John F. Onion, Jr. and of the April 11 hearing before this court; (4) the Honorable John F. Onion, Jr. was duly and properly appointed to perform the duties of a master in hearing the evidence and making findings of fact on behalf of this court; and (5) Assistant Attorneys General Shane Phelps and John Klassen were duly and properly appointed to obtain and present evidence before the Hon-

orable John F. Onion, Jr. and were duly and properly appointed to present argument before this court.

This court adopted in full the findings of fact filed by the Honorable John F. Onion, Jr., which findings of fact were attached to and incorporated into the judgment in their entirety.

This court further found that its amended order dated February 17, 1995 is specific, clear, and unambiguous in its terms and that a reasonable trial judge would have readily understood the amended order to require that all proceedings in the specified cause be stopped immediately upon receipt of the order.

The court further found that Judge Reed was guilty of violating this court's amended order dated February 17, 1995 by failing to stop the proceedings in the cause styled *The State of Texas v. John Michael Ojeda*, cause numbers 569072 and 574180, and by continuing with those proceedings in disregard of this court's amended order.

The court therefore held Judge Reed in contempt of this court for violation of this court's amended order of February 17, 1995, as quoted above. The court assessed punishment at thirty days confinement and a fine of $500. The court further assessed costs in the amount of $1454 against Judge Reed.

The judgment of contempt entered on April 11, 1995 also contained a commitment order addressed to the Sheriff of Bexar County, Texas. This commitment order was presented to certain deputy sheriffs who duly took Judge Reed into custody. Judge Reed has since been released on a one hundred dollar personal bond pending a decision by the court of criminal appeals regarding whether to grant leave to file her application for writ of habeas corpus. The court of criminal appeals has not issued any stay order directed to this court, however, and this court perceives no jurisdictional bar to releasing this opinion to articulate the reasons behind its rulings on certain motions

---

2. On March 1, 1995, this court appointed Shane Phelps and John Klassen, Assistant Attorneys General of the State of Texas, to obtain and present evidence in this matter.

3. The findings of fact were originally due to be filed by March 22, 1995. By order of this court dated March 22, 1995, we extended that due date to April 5, 1995.

filed by Judge Reed in this matter as well as the reasons for its finding of contempt.

## II. MOTIONS and PROCEDURAL ISSUES

Shortly before the evidentiary hearing of March 17, 1995 commenced, Judge Reed filed a number of motions.[4] These motions were denied on March 17, 1995. The court now finds it appropriate to articulate the reasons for those denials.

*1. "Motion to Show Authority."*

Judge Reed requests that we direct the assistant attorneys general to show their authority to participate as counsel and to direct those attorneys to identify their client and its status prior to acting as counsel.

■ Section 402.021 of the Texas Government Code authorizes the attorney general to "prosecute and defend all actions in which the state is interested before the supreme court and courts of appeals." TEX.GOV'T CODE ANN. § 402.021 (Vernon 1990). The State's interest in the present matter is apparent: Judge Reed, the judge of a subordinate county court at law, is alleged to be in contempt of a state appellate court. Despite Judge Reed's protestations to the contrary, this matter does not simply involve a dispute between herself and a private litigant. The purpose of our courts is to adjudicate, not merely to advise. Central to the fulfillment of this purpose is that court orders must be obeyed. Judge Reed's refusal to obey the direct order of a superior court threatens the very integrity and continued validity of the State judicial system.

Further, being mindful of the seriousness of charging a sitting judge with contempt, this court determined to make every effort to assure the independent and neutral presentation of the issues. The procedure we adopted was in keeping with the quasi-criminal nature of the contempt proceeding. *See Ex parte Sanchez,* 703 S.W.2d 955, 957 (Tex. 1986) (quasi-criminal nature; conform to criminal procedures). We considered Ojeda's motion for contempt as analogous to a

complaint supporting a misdemeanor criminal information. Prosecution of such a complaint is not left to the private citizen, but is the responsibility of the State. We therefore concluded that it would be appropriate that the State, through the Office of the Attorney General, bear responsibility for prosecution of the charge of contempt levied against Judge Reed.

Finally, Judge Reed complains that the involvement of the assistant attorneys general deprives her of the right to confront the party accusing her of contempt. We note that John Longoria, the attorney-legislator who requested the legislative continuance and who filed the motion for contempt, testified at the evidentiary hearing and was subject to full cross-examination by Judge Reed's attorney. Judge Reed's ability to confront her accuser has not been hindered in any manner.

For these reasons, we reaffirm our prior ruling overruling the motion to show authority.

*2. "Motion to Quash Subpoenas Issued by Special Prosecutors."*

■ Judge Reed requests that we quash the subpoenas issued by the assistant attorneys general because (1) the assistant attorneys general lack statutory authority to appear as counsel and (2) our order appointing them does not give them subpoena power. The first assertion is overruled for the reasons stated above. We also conclude that our order appointing the assistant attorneys general to "obtain and present evidence" is sufficient to encompass subpoena power.

For these reasons, we reaffirm our prior ruling overruling the motion to quash subpoenas.

*3. "Motion to Dismiss Contempt Proceeding; Objection to Reference of Proceeding to Special Master and to Appointment of Special Prosecutors; and Original Answer of the Honorable Bonnie Reed."*

Judge Reed raises a number of complaints in this hybrid motion, some of which are

---

**4.** The motions are file-stamped March 17, 1995 at 8:43 and 8:44 a.m. The hearing was scheduled to commence at 9:00 a.m. on that date.

encompassed in the motions and rulings discussed above. For organizational purposes, we will address related or repetitious complaints together rather than addressing them in the order presented in the motion. For the reasons stated below, we reaffirm our prior ruling overruling the motion to dismiss and the objection to reference of the proceeding to a special master.

### a. Authority of this court to grant emergency temporary relief.

■ Judge Reed complains that this court had no authority to issue its amended order because it constitutes an invalid writ of prohibition. She urges that it is not a mandamus order because we did not order her to do anything; it is a prohibition order because we ordered her not to do something. Judge Reed misconstrues the nature of our order. We were never given the opportunity to issue any order on the merits of Ojeda's petition for writ of mandamus. The amended order is neither a writ of mandamus nor a writ of prohibition. Rather, it was simply an attempt to maintain the status quo and preserve our jurisdiction to consider the merits of the petition for writ of mandamus.

Rule 121 of the rules of appellate procedure specifically gives this court the authority to grant immediate temporary relief after granting leave to file a petition for writ of mandamus. TEX.R.APP.P. 121(d). Our amended order is not a writ of prohibition against holding the trial; it is a stay order issued ancillary to the mandamus proceeding and for the purpose of protecting our jurisdiction so that we could consider the merits of that mandamus action.

### b. Vagueness of the amended order.

Judge Reed complains that this court's amended order is vague and "decidedly unspecific."

> For a person to be held in contempt for disobeying a court decree, the decree must spell out the details of compliance in clear, specific and unambiguous terms so that such person will readily know exactly what duties or obligations are imposed upon him. Interpretation of the provisions of the court order in question should not rest upon implication or conjecture. The allegedly contemptuous acts must be directly contrary to the express terms of the court order. On the other hand, a court order need not be 'full of superfluous terms and specifications adequate to counter any flight of fancy a contemner may imagine in order to declare it vague.' These general rules of law require us to balance the due process rights of individuals accused of contempt with the power of courts to enforce their orders.

*Ex parte Blasingame,* 748 S.W.2d 444, 446 (Tex.1988) (citations omitted); *see also Ex parte Brister,* 801 S.W.2d 833, 834 (Tex. 1990).

Judge Reed's assertion that the amended order is not sufficiently specific is disingenuous. The order clearly required Judge Reed to stop the trial immediately, without regard to what stage the proceedings had reached. It was not necessary to include further "superfluous terms and specifications adequate to counter any flight of fancy" Judge Reed might devise to imagine that the order is vague. *See Ex parte Blasingame,* 748 S.W.2d at 446.

### c. Concern for rights of defendant and State.

Judge Reed also complains that she did not know how to stop the trial against Ojeda without damaging his right to a swift trial. Whether Judge Reed understood the order and how to comply was a matter to be developed at the evidentiary hearing, not one for resolution by a pre-hearing motion to dismiss.

Judge Reed also complains that she did not know how to stop the trial without damaging the State's right to hold defendants accountable for crimes. Again, this was a matter to be presented at the evidentiary hearing, not in a pre-hearing motion to dismiss.

### d. Specificity of the show cause order.

Judge Reed complains that the show cause order issued to secure her appearance at the evidentiary hearing is flawed because it fails

to specifically state the manner in which she violated our amended order.

In a case involving conduct outside the presence of the court, due process requires that the alleged contemnor receive full and unambiguous notification of the accusation of any contempt. This notice should be by show cause order or equivalent legal process personally served on the alleged contemnor, and it should state when, how and by what means the defendant has been guilty of contempt.

*Ex parte Vetterick,* 744 S.W.2d 598, 599 (Tex. 1988); *see also Ex parte Blanchard,* 736 S.W.2d 642, 643 (Tex.1987).

■ The show cause order specifically identifies the amended order Judge Reed is accused of violating. It quotes the pertinent portion of the amended order, which specifically states that Judge Reed was to

IMMEDIATELY CEASE AND DESIST from engaging in any further proceedings in the cause styled *The State of Texas v. John Michael Ojeda,* cause numbers 569072 and 574180, currently pending in County Court at Law No. 9 of Bexar County, Texas. This order is to be immediately complied with regardless of what stage the proceedings are in and regardless of whether any or all evidence has been introduced.

The show cause order then states that Judge Reed failed to comply with that order. The quoted portion of the amended order, read in the context of the show cause order, is sufficient to apprise Judge Reed that she is accused of committing contempt by failing to stop the proceedings against John Michael Ojeda, as ordered. This constitutes sufficient notice for due process purposes. Because there was only one way to comply with the order—to immediately stop the proceedings—there was only one way to violate the order—failing to stop the proceedings. A fair reading of the show cause order leads to the conclusion that Judge Reed was adequately notified of the basis of the contempt charge against her.

■ We also question whether Judge Reed waived any notice defect by failing to raise it before the date of the evidentiary hearing. By analogy, the Code of Criminal Procedure provides,

If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity....

TEX.CODE CRIM.PROC.ANN. art. 1.14(b) (Vernon Supp.1995). Judge Reed was served with the show cause order on March 2, 1995. She did not raise any objections to that order until approximately fifteen minutes before the evidentiary hearing on March 17, 1995. It is the position of this court that any complaints regarding the sufficiency of the show cause order raised for the first time on that date are not timely and are waived.

*e. Authority of the Honorable John F. Onion, Jr.*

Judge Reed complains that, because we referred the evidentiary hearing to the Honorable John F. Onion, Jr., she was improperly held to stand before a court other than the court that issued the order she was accused of violating.

■ Judge Onion was duly appointed by the supreme court to act as a temporary member of this court. We then assigned Judge Onion the task of hearing the evidence in this matter and making findings of fact. In completing this task, Judge Onion acted at all times as a member of this court. Thus, Judge Reed has never been held to stand before any court other than the court of appeals.

■ The court of appeals has the authority to conduct its own evidentiary hearing on a contempt allegation or it may refer the matter of taking testimony and hearing evidence to a district court. *Ex parte Werblud,* 536 S.W.2d 542, 544–45 (Tex.1976). The supreme court prefers the latter course of action. *Id.* at 545. In this case, however, because the alleged contemnor is a sitting judge, there is no appropriate district court to whom the case could have been referred. This court determined that a suitable compromise would be to refer the matter of taking testimony and hearing evidence to an

appointed temporary member of the court rather than having the court as a whole conduct the evidentiary hearing. This solution is proper under the court's authority to conduct its own hearing, but is also in keeping with the spirit of the supreme court's preference that the evidentiary hearing be referred to another court.

### f. Authority of the assistant attorneys general.

Judge Reed asserts that the assistant attorneys general are without authority to act in this matter. This contention is discussed and rejected above.

### g. Ex parte petition for writ of mandamus.

Judge Reed complains that Ojeda filed his petition for writ of mandamus *ex parte*. This court is not aware of any requirement that a judge be given prior notice of the filing of a petition for writ of mandamus, nor has Judge Reed cited any such authority. Rule 121 requires only that the movant give the named respondent prompt notice (not prior notice) and that such notice be reflected in a certificate of service. *See* TEX.R.APP.P. 121(a)(2)(G), (b).

Further, Judge Reed does not indicate what bearing having prior notice of the mandamus action has on the issue of whether she received and complied with this court's amended stay order. Any errors committed by Ojeda in bringing his mandamus action may have affected his right to relief, had this court been given an opportunity to address the merits of his petition. Because Ojeda's petition was sufficient to invoke our mandamus jurisdiction, though, any errors affecting his right to relief did not affect our ability to issue a stay order in protection of our jurisdiction.

### h. Failure to file a motion for new trial.

Judge Reed complains that Ojeda filed a notice of appeal from his conviction without first filing a motion for new trial. This court has been unable to find any authority requiring the filing of a motion for new trial before filing a notice of appeal in a criminal case, and Judge Reed has cited no such authority.

Further, Judge Reed does not explain how Ojeda's filing a notice of appeal without filing a motion for new trial, which occurred well after the judge refused to obey this court's amended order, has any bearing on the issue of contempt.

### i. Right to a de novo evidentiary hearing before the court en banc.

Judge Reed asserts that she is reserving her right to seek a *de novo* evidentiary hearing before this court *en banc* following the evidentiary hearing before Judge Onion. This contention is moot. While Judge Reed may have reserved this "right," she never invoked it by requesting a *de novo* hearing following the hearing before Judge Onion.

This court recognizes that some of the procedures utilized in the present matter appear to be somewhat unusual. However, this court was faced with a situation apparently lacking in precedent—the refusal of a subordinate court to obey the direct order of a superior court. Neither this court nor Judge Reed has been able to find another such case in Texas jurisprudence. Hampered by the novelty of the situation, this court made every effort to fashion a procedure designed to ensure a fair presentation of the issues and to protect the due process rights of the accused judge. If we have erred in any of our procedures, we invite direction from the Texas Supreme Court or Court of Criminal Appeals so that we might know with more certainty what procedures to employ in the future. Of course, we hope and anticipate that we will not be faced with such a regrettable situation again.

## III. FINDING OF CONTEMPT

"The power to punish a party who fails or refuses to obey a prior order or decree of the court for contempt is an inherent power of a court and is an essential element of judicial independence and authority." *Ex parte Barnett*, 600 S.W.2d 252, 254 (Tex.1980); *accord Ex parte Pryor*, 800 S.W.2d 511, 512 (Tex.1990). The essence of contempt is conduct that obstructs or tends to obstruct the proper administration of justice. *Ex parte Gibson*, 811 S.W.2d 594, 596

(Tex.Crim.App.1991); *Ex parte Taylor,* 807 S.W.2d 746, 748 (Tex.Crim.App.1991). Common law criminal contempt, however, does not require the obstruction of the proper administration of justice. *Ex parte Krupps,* 712 S.W.2d 144, 149 (Tex.Crim.App.1986), *cert. denied,* 479 U.S. 1102, 107 S.Ct. 1333, 94 L.Ed.2d 184 (1987). Criminal contempts may be acts in disrespect of the court or its process, acts that obstruct the administration of justice, or acts which tend to bring the court into disrespect. *Id.; see also Ex parte Werblud,* 536 S.W.2d at 545 (affront to the dignity of the court).

■■■ The action of Judge Reed—refusing to comply with an order of a superior court— is a proper subject of contempt because it is an act in disrespect of this court and which tends to bring this court into disrespect in the community. It is also an act in obstruction of the proper administration of justice in that it deprived this court of the opportunity to rule on the merits of a petition for writ of mandamus then pending before the court.[5] If the act is contemptuous, it is the duty of this court to assert its independence and authority and to punish Judge Reed accordingly.

■■■ The central question of fact presented in this proceeding is whether Judge Reed *intentionally* refused to comply with this court's amended order. It is undisputed that she received that order, it was read to her, and she failed to stop the proceedings against John Michael Ojeda in contravention of that order. Judge Reed asserts, however, that she failed to comply with the order only because she did not know how to comply. This assertion is not supported by the record.

■■■ It is well-settled that intent may be proved by circumstantial evidence. "Intent can be inferred from the acts, words, and conduct of the accused." *Dues v. State,* 634 S.W.2d 304, 305 (Tex.Crim.App.1982); *see also Beltran v. State,* 593 S.W.2d 688, 689 (Tex.Crim.App.1980). It is also well-settled that the trier of fact is the judge of the

credibility of the witnesses and the weight to be given their testimony. *Mattias v. State,* 731 S.W.2d 936, 940 (Tex.Crim.App.1987); *Limuel v. State,* 568 S.W.2d 309, 311 (Tex. Crim.App.1978). It is authorized to accept or reject any or all of a witness's testimony. *Mattias,* 731 S.W.2d at 940; *Limuel,* 568 S.W.2d at 311.

In the present case, Judge Reed testified that she did not intentionally violate the amended order, but simply did not know how to comply. Judge Onion, as trier of fact, was entitled to assess the credibility of Judge Reed and reject this testimony. That he did so reject this explanation is apparent in his specific finding that Judge Reed "took it upon herself to pass upon the validity of the order." This finding, and the implied finding that she intentionally violated the amended order, is supported by an abundance of circumstantial evidence.

Without reciting all of the evidence in the various statements of facts and exhibits before us, we note that Judge Reed displayed a pattern of behavior calculated to prevent the exercise of Ojeda's attorney's right to a legislative continuance. Judge Reed denied the continuance without reading the applicable law even though it was presented to her in open court. She invoked a supposed exception for cases in which danger is present even though there was no information before her indicating that any such danger existed.[6] Most significantly, she denied the continuance even though the prosecutor informed her that the State was not ready for trial and would prefer at least two more weeks to prepare.

We stress that Judge Reed is not being charged with or held in contempt for the actions recited in the above paragraph, nor could she be. While they evidence a disregard for established law and for her oath as a judge, these actions were not taken in violation of any court order. These actions are, however, relevant to our determination of whether Judge Reed intentionally disregard-

---

5. Ojeda's petition for writ of mandamus was dismissed as moot on April 21, 1995.

6. It is apparent from the record that Ojeda and the complainant had reconciled and no immediate danger existed at the time of his trial.

ed our amended order because they evince an intention to complete the trial against Ojeda without affording him the continuance he had sought.[7]

Further evidence of Judge Reed's intentional disregard of our amended order comes from her own statements made on February 17, 1995. When presented with our original stay order, Judge Reed responded, "I believe that that is moot at this point and we're going to go ahead and proceed." Again, Judge Reed is not being held in contempt for violation of this order. Her reaction to the original order, however, is instructive in ascertaining the reason for her failure to obey the amended order. In response to the original order, Judge Reed did not indicate in any manner that she was uncertain as to how to comply. She simply and clearly stated that she had decided the order was not valid and she was not going to obey it.

In keeping with this attitude, when presented with the amended order, Judge Reed again stated that she believed the order was moot and that the trial would proceed—"So I respectfully will put this in the file, but we're going to go forward at this time." After Ojeda's attorney read to her that portion of the amended order specifying that she should immediately stop the trial, "regardless of what stage the proceedings are in and regardless of whether any or all evidence has been introduced," Judge Reed responded, "Thank you very much. Let's please proceed."

Again, there is no indication that Judge Reed suffered any confusion as to what she was ordered to do or how she was supposed to comply. The record does not indicate that Judge Reed ever contemplated complying with the order at all, much less that she gave any consideration to the manner of compliance. As noted by Judge Onion, Judge Reed did not make any attempt to contact this

court for clarification of its order, nor did she seek any suggestions from the prosecution or defense regarding how she should comply. While Judge Reed was not required to seek such clarification or suggestions, her failure to do so is some indication that uncertainty over how to comply played no part in her decision to ignore the amended order. The record clearly speaks for itself. Judge Reed determined that she was not bound by the order and intentionally refused to comply.[8]

This conclusion is buttressed by evidence of a statement made to the news media after Ojeda's motion for contempt had been filed: "If they [the appeals justices] want to hold me in contempt for following my conscience, then I guess that's what they're going to have to do." This statement does not indicate any confusion or uncertainty regarding our amended order. Rather, it indicates that Judge Reed intentionally refused to comply with our amended order because of her displeasure with legislative continuances.

Judge Reed has repeatedly asserted to this court that the only reason she did not obey our amended order is because she could not figure out how to obey. Judge Onion rejected this explanation and we concur. Judge Reed testified that she understood what she was being ordered to do—stop the trial. She contends, however, that she did not know whether she should stop it by declaring a mistrial, by dismissing the jury and telling them to come back at a future time, or by simply walking off the bench and going home.

It is significant to note that the events here at issue occurred at approximately 5:00 or 5:30 on a Friday afternoon preceding a holiday weekend. It is inconceivable to this court that a judge with ten years experience on the bench would not know how to recess a trial in these circumstances, at least for the duration of the holiday weekend. Judge

---

7. This intention to complete the trial immediately at all costs is also evident in the manner in which the trial was conducted. The trial commenced at approximately 10:30 a.m. and proceeded until approximately 7:30 that evening without breaks for meals or any other significant breaks.

8. Judge Reed violated the amended order once again on March 3, 1995 when she signed an

order purporting to sua sponte grant Ojeda a new trial. This action was taken on advice of counsel and a friend and is further evidence of Judge Reed's conscious determination that she is not bound by the amended order. We stress, however, that Judge Reed is not being held in contempt for violation of the amended order by issuing the new trial order.

Reed stated her concern that if she allowed the jurors to go home, she might have trouble getting them to come back. Earlier in this same case, however, Judge Reed herself contemplated a procedure whereby the jury might be excused for the bulk of the week and then asked to return. When the motion for continuance was first urged, Judge Reed stated, "[W]e will hear the facts of this case on Friday, Saturday and on Sunday. If it is not resolved in that time, then we will ask the jury, respectfully, to come back on Friday of the next week and we will continue again through the weekend." Obviously, Judge Reed understands the ability of a court to recess a trial and reconvene at a later date.[9]

We also find it telling that, while she asserts that the order could have been complied with in a number of ways, Judge Reed did not attempt to comply in *any* manner. In *Ex parte Crawford,* 684 S.W.2d 124 (Tex. App.—Houston [14th Dist.] 1984, orig. proceeding), the subject child support order could have been read to require payment of either of two amounts, but relator knew that he was to pay one of those amounts. The court rejected relator's contention that he was entitled to habeas relief because the order he violated was vague, in large part because relator chose to ignore the order completely rather than to attempt compliance by paying even the lesser amount. *Id.* at 126. *See also Ex parte Longoria,* 671 S.W.2d 673, 675 (Tex.App.—San Antonio 1984, orig. proceeding) (Reeves, J., dissenting).

In the present case, Judge Reed testified that she knew that this court was ordering her to stop the trial. She also testified to a number of ways this could have been accomplished. She did not, however, attempt to comply with the amended order by employing any of these means. She chose instead to ignore the order completely.

■ For all the reasons stated above, this court finds beyond a reasonable doubt

that the Honorable Bonnie Reed intentionally refused to comply with our amended order of February 17, 1995 and that she is in contempt of this court. This court further determines that an appropriate punishment is a $500 fine and incarceration for thirty days.

This has been a most unfortunate episode and not one in which this court has taken any pleasure. Inaction in the face of this affront to the dignity of the court, however, would have been as inexcusable as Judge Reed's inaction in the face of our direct order. We act now to "vindicate public authority," *see Ex parte Werblud,* 536 S.W.2d at 545, and to reaffirm the structure and validity of our judicial system. We are confident that we will not face this situation again.

All justices join in this opinion.

---

9. Judge Reed gives some indication that she did not believe she could recess the trial for two months and tell the jury to come back in April, after the scheduled date for the mandamus hearing. This argument is without merit. At the time Judge Reed refused to obey our amended

order, we had not yet set the mandamus action for formal submission. Indeed, the submission of that action was delayed in large part because of the confusion and additional work generated by the necessity for the present contempt proceedings.