In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-01-446 CV


____________________



IN RE NICOLE RENEE FARMER






Original Proceeding








OPINION



 This petition for writ of habeas corpus arises from alleged violations of temporary
orders issued in a suit affecting the parent child relationship; the minor children involved
are M. F. and J. F., and their divorced parents are relator Nicole Farmer and respondent
Jessie Farmer. On October 3, 2001, the trial court found Nicole in contempt of court for
violation of a court order and ordered her confined in the Montgomery County Jail for
seven days. On October 5, 2001, Nicole filed her petition for writ of habeas corpus after
which this court ordered her released upon the posting of a $500 bond. See Tex. Gov't
Code Ann. § 22.221(d) (Vernon Supp. 2002). 

Temporary Orders and Contempt Judgment
 

 On February 12, 2001, the trial judge signed temporary orders that contained 
provisions relating to conservatorship, possession, child support, and medical insurance;
the temporary orders also contained "special provisions" relating to mental health
evaluation and treatment for the children and the parties. Prior to the signing of the
temporary orders, the trial judge held hearings on October 10 and 26, 2000. (1) At the
October 26, 2000, hearing, the trial judge made clear his intent to enforce the order
strictly. 

 I'm going to sign it with the understanding between both of you . . . if it is 
violated at all, that there will be either monetary sanctions or jail time. . . . 
 

 Let's talk about it again. This order is going to mean what it says in every
respect, so, let's talk about what the order is going to say. . . . 


 The initial thrust of this entire agreement and this order is to place [M.F.]
and [J.F.] in a situation of stability. By that, I mean, emotionally and
medically-medically with respect to [J.F.]. . . . 


 Whatever Dr. Parham slash his clinic advises is what we're going to do. If
any of you miss one appointment, bring your suitcase. You're going to jail,
period. I'm absolutely not going to put up with that at all.

 

 Is that clear? Is that clear? And if a child misses an appointment that
happens to be in your possession at the time, I'm gonig [sic] to put you in
jail. . . . 


The trial judge's intent to enforce the order was unmistakable. 

 Some six months later, Jessie filed a motion to enforce in which he alleged that
Nicole violated the temporary orders. The pertinent provision of the temporary orders is
as follows:

 

 The parties . . . and the children, [M.F.] and [J.F.], are ORDERED
to submit themselves and the children for psychological testing,
evaluation, counseling, and treatment by Steven Parham, PhD, . . . 
or any other mental health care provider recommended by Dr.
Parham and shall fully cooperate with and follow any directives
established by any mental health care giver for care, therapy,
evaluation, treatment or referral for the parties . . . or the children
who are the subject of this order. 


 

 At the conclusion of the hearing on the enforcement motion, the trial court found
Nicole in contempt of court; that same day the trial judge signed a contempt judgment
which stated that Nicole violated the provision set out above in the following manner:

 

 On or about February 12, 2001, and continuing on a regular basis
thereafter, Nicole Farmer failed and refused to submit herself and her
children, [M.F.] and [J.F.], for psychological testing, evaluation,
counseling and treatment by Steven Parham, PhD, or any other
mental health provider recommended by Dr. Parham.


 


 On or about February 12, 2001, and continuing on a regular basis
thereafter, Nicole Farmer failed and refused to fully cooperate with
and follow any directives established by Stephen Parham, PhD, or
Leonard Bohanon, PhD., a mental health care provider recommended
by Stephen Parham, PhD, for care, therapy, evaluation, treatment or
referral for the parties . . . or the children who are the subject of this
order.



After setting out the violations of the temporary orders, the contempt judgment ordered 
Nicole to spend seven days in the county jail. The judgment then provided that Nicole
"shall immediately make an appointment with [Dr.] Bohannon [sic] . . . or another Ph.D.-level mental healthcare provider of her choice for psychological counseling and therapy
within 7 days after being released from the Montgomery County Jail, and unless such
appointment is made within such 7-day period after release from jail, Nicole Farmer is
again committed to Montgomery County Jail until she shall purge herself from
contempt[.]" In addition to the violations set out above, the trial court found that Nicole
violated another provision of the temporary orders. However, Nicole has only challenged
the violations set out herein. 

 In her habeas corpus petition, Nicole raises three issues: (1) she contends she did
not violate those portions of the trial court's order that require her to cooperate fully with
the mental health care provider and to follow his directives, and, therefore, she is not in
contempt; (2) the unitary sentence for contempt imposed by the trial judge is invalid, since
she is not guilty of at least one of the counts of contempt; and (3) the temporary order is
too vague and indefinite to be enforced through contempt. 


Standard of Review


 A trial court has broad discretion in enforcing its orders; one method of
enforcement is through an order of contempt. Ex parte Roan, 887 S.W.2d 462, 464 (Tex.
App.--Dallas 1994, orig. proceeding). "Contempt of court is broadly defined as
disobedience to or disrespect of a court by acting in opposition to its authority." Ex parte
Chambers, 898 S.W.2d 257, 259 (Tex. 1995). There are two types of contempt: direct
contempt involves disobedience or disrespect occurring within the trial judge's presence,
while constructive (or indirect) contempt takes place outside the court's presence. Id. In
this case, the alleged violation of the court order occurred outside the trial judge's presence
and therefore constitutes constructive contempt. 

 Contempt is also distinguished by the type of punishment the trial court imposes. 
 While the purpose of criminal contempt is to punish the contemnor for some past conduct
or disobedience to a court order, the purpose of civil contempt is to persuade or coerce the
contemnor to obey an order of the court. In re Johnson, 996 S.W.2d 430, 433 (Tex.
App.--Beaumont 1999, orig. proceeding). In civil contempt, the confinement is
conditioned upon obedience, and, therefore, it is said the civil contemnor carries the keys
of the prison in her own pocket. Id. 

 Here, the portion of the contempt judgment that we must consider is criminal
contempt: Nicole is challenging the seven day jail incarceration ordered by the court for
failing to obey the court's order. She maintains the portion of the judgment labeled "civil
contempt" is not ripe for review. We agree that the civil contempt is not reviewable at this
time. We will not consider questions concerning the propriety of being imprisoned in the
future for civil contempt (1) until the sentence levied for committing criminal contempt
expires and (2) then only if she disobeys the order concerning future conduct. See
generally In re Scariati, 988 S.W.2d 270, 273 (Tex. App.--Amarillo 1998, orig.
proceeding).

 As a general rule, decisions in contempt proceedings are not appealable, and the
validity of the contempt judgment can only be attacked by a writ of habeas corpus. See
Metzger v. Sebek, 892 S.W.2d 20, 54 (Tex. App.--Houston [1st Dist.] 1994, writ denied.). 
If the contempt order does not involve confinement, the only possible relief is by writ of
mandamus. In re Long, 984 S.W.2d 623, 625 (Tex. 1999). Here, the order does involve
confinement and Nicole properly attacks the finding of criminal contempt by her habeas
corpus petition. See Ex parte Rohleder, 424 S.W.2d 891, 892 (Tex. 1967). As the relator
in a habeas corpus proceeding, she must conclusively demonstrate her entitlement by
showing the contempt order is void and not merely voidable. Ex parte Roan, 887 S.W.2d 
at 464. 

 In a criminal contempt conviction for disobedience to a court order, the trial court
must be shown proof beyond a reasonable doubt of the following: (1) a reasonably specific
order; (2) a violation of the order; and (3) the willful intent to violate the order. 
Chambers, 898 S.W.2d at 259. The trial court has the duty and right to judge the
witnesses' credibility and the testimonial weight to be given specific testimony. The trial
judge can disregard some or all of a witness's testimony because, as factfinder, the judge
may believe some but not all of what a witness swears. In re Reed, 901 S.W.2d 604, 612
(Tex. App.--San Antonio 1995, orig. proceeding). In our review of a habeas corpus
petition that seeks to have a contempt judgment declared void, we do not re-weigh the
evidence adduced at the contempt hearing to determine whether it preponderates against
the judgment. Chambers, 898 S.W.2d at 259. Our function is to determine if the trial
court's contempt findings are so completely without evidentiary support as to render the
trial court's judgment void on the ground that it deprives the relator of due process. Ex
parte Howell, 843 S.W.2d 241, 245 (Tex. App.--Houston [1st Dist.] 1992, orig.
proceeding). 

Public Policy


 We begin our analysis by noting that it is the public policy of this State to "provide
a safe, stable, and nonviolent environment for the child . . . ." Tex. Fam. Code Ann.
§ 153.001(a)(2) (Vernon Supp. 2002). In child custody matters, an appellate court gives
deference to the trial court in its determination of what is in the best interest of the child. 
See Doyle v. Doyle, 955 S.W.2d 478, 481 (Tex. App.--Austin 1997, no pet.). What we
have before us, however, is not a child custody matter, but instead a habeas corpus petition
asking us to order Nicole Farmer released from the confinement (2) mandated by a contempt
judgment. Her petition is not an appeal, and she does not raise a child custody issue --
i.e., the designation of a conservator, the amount of child support, or visitation time
frames. Nonetheless, we are presented with a record evidencing a child in need of
professional medical and psychological attention, and the trial judge's efforts to see that
the child receives it. The trial court must be given great deference in its efforts to assure
that the child is not deprived of those needs by the parties to the litigation; if the contempt
findings are not so completely without evidentiary support as to render the judgment void
on due process grounds, we will uphold the judgment. See generally Ex parte Howell, 843
S.W.2d at 245. 

Was There A Violation Of The Temporary Orders?


 Nicole first argues there is no evidence to support the trial court's finding that she
violated the temporary orders. In particular, she directs us to the allegation that she
"failed and refused to fully cooperate with and follow any directives established by
[Parham] or [Bohanon], a mental health care provider recommended by [Parham], for
care, therapy, evaluation, treatment or referral of the parties . . . or the children who are
the subject of this order." Nicole argues the disjunctive language of the order requires her
to "fully cooperate with" and "follow any directives established by [Parham] or
[Bonhanon]." (Emphasis added). Since the order employs disjunctive wording, she
maintains that if there is evidence she cooperated with just one of the two men, i.e.,
Bonhanon, then the requirement of full cooperation and adherence to the directives is
satisfied. However, we need not address the grammatical or syntactical aspect of her
argument; regardless of the import of the "or" language, the record reveals evidence of
Nicole's failure to abide by the trial judge's order even as applied to Bohanon. 

 To support her contention that she did not disobey the trial court's order, Nicole
directs us to testimony from Dr. Bohanon. In describing his involvement in the case,
Bohanon indicated he understood his function to be limited to "family therapy" treatment --
the family being "Nicole, Jessie, Dawn [Jessie's wife], and all of their children." In
evaluating Nicole's conduct in the confines of his understanding of his role, Dr. Bohanon
testified that Nicole "ha[d] been cooperative with [him]," had "aid[ed] the process," and
had "fully complied with all requests" he had made of her. 

 The record, however, contains other conflicting evidence from Dr. Bohanon that
the trial judge could have believed and on which he could have based his order of
contempt. Dr. Bohanon agreed there had been extreme difficulties between Jessie and
Nicole Farmer in the on-going custody litigation. In his role as family therapist, Bohanon
acknowledged he recommended (1) that Nicole see him or someone else and (2) that she
take J.F. to see Carla Wynn, a licensed masters social worker and psychotherapist. 
Regarding his recommendation concerning J.F., Dr. Bohanon testified as follows: 

 Q. (Jessie's Attorney): Is it not a fact that you wrote a letter saying
that you recommended therapy with Carla Wynn?


 A. (Dr. Bohanon): Yes, it is a fact. 


Bohanon's letter recommending a visit to Carla Wynn is contained in the record. 

 Upon further questioning, Dr. Bohanon again testified of his communication with
Nicole:

 A. Carla Wynn was recommended to perform an initial assessment
of [J.F.] and herself at that point to determine what treatment regimen would
be indicated.


The trial judge asked his own questions to clarify the situation:


 THE COURT: Let me ask the question of the doctor. You said previously
that you didn't feel like you were qualified to make an evaluation concerning
a child of this age. 


 THE WITNESS: That's correct, sir.


 THE COURT: Is Ms. Wynn?


 THE WITNESS: Yes, she is. 

 

 THE COURT: Okay. And let me apologize. Who did you recommend that 
-- who did you tell, as far as these parties are concerned, that you wanted the
child taken to Carla Wynn? All of them; one of them?


 THE WITNESS: To the best of my knowledge, that representation has been
given to both Jessie and Nicole.


 THE COURT: Jessie and Nicole, did you say?


 THE WITNESS: Yes, sir. 


 There is no indication from Bohanon that Nicole ever expressed to him a lack of
understanding of his recommendation or of the requirements of the order. Instead, he "felt
that [she] was concerned enough about the fairness of the order that she might be better
served in another venue." Since he understood her to have reservations about his own
fairness, he indicated he left the decision regarding future visits to her. In describing the
frequency of the family therapy visits, Bohanon indicated that Jessie had brought M.F. (the
child living with Jessie) some nineteen times for treatment, while Nicole had never brought
J.F. in to see him at all and had come only two times to see him herself. It was during
those two visits that Nicole expressed her reservations about the fairness of the trial court's
order and of Dr. Bohanon himself. It was also Bohanon's understanding that Nicole had
never taken J.F. ( who lives with her) to any mental health care provider after the issuance
of the temporary orders. In assessing the results of the family therapy treatment, Bohanon
testified the progress with J.F. had been "quite slow," while M.F.'s progress had been
"very good." 

 In considering the testimony before him, the trial judge concluded the temporary
order was violated. As detailed above, the record demonstrates evidentiary support for his
conclusion. The following colloquy, which occurred during the October 3, 2001, hearing
on the motion to enforce, illustrates the point:

 Q. (Jessie's Attorney): And you didn't ask Nicole to come back, but -- why
didn't you ask her to come back?


 A. (Dr. Bohanon): When I reach the end of an initial visit with a client, . .
. we do a collaborative review of what that person's goals are and how I
might be able to be helpful to them. That review was done. We left it so
that if Nicole wanted to come back for treatment with me, she was entitled
to do that. She is also entitled to seek somebody else for treatment if she felt
more comfortable in that arrangement.


 Q. Well, now, the problem with that is that . . . may be a good clinical
approach; but . . . we were working under a Court order for Nicole to be
evaluated and going to family counseling. You understood that, right? 


 A. And I'm a clinician, sir, so my approach is clinical.


 Q. So, by not asking her and encouraging her to come back to participate
in the family therapy, it didn't really fulfill the needs of why you were in the
picture in the first place, as far as the Court order was concerned.


 A. I believe it was consistent with the request to do family therapy. Family
therapy doesn't even require everybody to see the same therapist. It is
possible for more than one therapist to collaborate in just an office visit and
still work on the same case.


 THE COURT: The bottom line . . . is, you told her you recommended she
come to see you or see someone else in your profession, as long as it's one
or the other.


 A. Yes, sir.


 THE COURT: You recommend that today.


 A. Yes, sir. I'd recommend that today.


 THE COURT: She didn't come back to see you.


 A. She came back to see me one additional time.


 THE COURT: After that, she didn't.


 A. No.


 THE COURT: And has she seen anybody else in your profession, to your
knowledge?


 A. Not to my knowledge. 


 . . . .


 THE COURT: Okay. And the only failure is, that you're seeing here, if you
want to call it a failure - and I don't mean legally -- but the only follow-up
or testing that has not been done is two. Ms. Wynn has not see the child
[J.F.].


 A. No, she's not, to my knowledge.


 THE COURT: And Nicole has not gone back to you or someone else, to
your knowledge.


 A. That's correct, sir. 


The trial judge succinctly stated the violations: Nicole had not gone back to see Dr.
Bohanon or anyone else, and Nicole had not taken J.F. to see Bohanon, Carla Wynn, or
anyone else. Though the record contains testimony from Dr. Bohanon that Nicole
cooperated in the process -- at least to the limited extent she chose to do so, there is also
evidence in the record of her violation of the trial court's order. Jessie also testified, and
the trial court heard his testimony in support of the motion. After the movant rested,
Nicole presented no evidence. 

 The record reflects the judge's concern for the child's welfare and his intent to
punish Nicole for her contempt of his order and to assure that the parties comply with his
orders in the future. Based on our review of the record, we conclude there is evidentiary
support for the trial court's finding Nicole Farmer in contempt for failing to obey the trial
court's order. We overrule her first issue. 

Unitary Sentence


 Nicole contends the "unitary sentence" (the single sentence for all the contempt
violations) imposed by the trial court is invalid, because she is not guilty of at least one of
the counts of contempt. When, as here, a trial court assesses a single punishment for more
than one contemptuous act, and at least one of the acts was not punishable by contempt,
the entire contempt judgment is void. See Ex parte Jordan, 787 S.W.2d 367, 368 (Tex.
1990). Because Nicole's issue is predicated on a challenge to only one of the violations,
and we have affirmed she did commit that violation, the unitary sentence is not void. Her
issue two has no merit and is overruled. Further, we need not address Jessie's suggestion
that we rely on the "modified contempt order" signed by the trial court on October 29,
2001. The only change in the modified order -- the assessment of a separate punishment
for each violation, to run concurrently -- apparently represented the trial court's attempt
to resolve the "unitary punishment" problem in the event this court found Nicole did not
commit the violation she challenged. Because we have determined Nicole committed the
only violation she challenged on appeal, it is not necessary to consider Jessie's suggestion
that we review the "modified order." Issue two is overruled.

 Are The Temporary Orders Vague And Indefinite?


 In issue three Nicole argues the temporary orders are too vague and indefinite to
enforce through contempt. The language she challenges is that which requires her to
"submit" herself and the children for "psychological testing, evaluation, counseling and
treatment," and to "fully cooperate with and follow any directives established by any
mental health care giver for care, therapy, evaluation, treatment or referral for the parties,
. . . or the children who are the subject of this order." Claiming the language makes it
impossible for her to determine exactly what she is required to do, she argues there is no
proper basis for the trial court's having found her in contempt. In support of her claim,
Nicole points out that Dr. Bohanon himself characterized the requirement of submission
to "psychological testing, treatment, evaluation, counseling, and treatment" as being "too
vague" to give him and his colleagues sufficient guidance regarding the kind of evaluation
they were to perform. In addition, Dr. Bohanon characterized his recommendation to have
J.F. see Carla Wynn as simply providing "information" to Nicole, rather than giving a
directive. 

 To support a judgment of contempt, Texas law requires that the underlying decree
set out the terms of compliance in clear, specific, and unambiguous terms so that the
person charged with obeying the decree will readily know exactly what duties and
obligations are imposed. Ex parte Chambers, 898 S.W.2d at 260. "A court order is
insufficient to support a judgment of contempt only if its interpretation requires inferences
or conclusions about which reasonable persons might differ." Id. Only when there are
reasonably alternative constructions will the order not be enforced. Id. Interpretation of
the provisions of the court order should not be grounded in implication or conjecture. See
Ex parte Hodges, 625 S.W.2d 304 (Tex. 1981). On the other hand, the court "order need
not be full of superfluous terms and specifications adequate to counter any flight of fancy
a contemnor may imagine in order to declare it vague." Ex parte Chambers, 898 S.W.2d
at 260. Our review is not limited to only the phrases alleged to be vague; we consider the
trial court's order as a whole in determining whether the challenged language is
ambiguous. Ex parte Johns, 807 S.W.2d 768, 773 (Tex. App.--Dallas 1991, orig.
proceeding). 

 The temporary orders in this case are sufficiently specific to apprise Nicole of the
actions required of her. Unlike cases that involve vague or ambiguous orders concerning
the amount or timing of child support payments or the place, time, and duration of
visitation, the orders here concern mental health evaluation and treatment for the parents
and their children. In reviewing the entire order, we are cognizant of the customary
provisions pertaining to conservatorship, child support, possession, and medical insurance. 
We also take note of the section entitled "Special Provisions." Five of the six "special
provisions" deal in some way with the psychological evaluation and treatment of J.F.,
M.F., Nicole, and Jessie. Being "special provisions," they address the special needs and
circumstances inherent in a case where, by all accounts, the parents are "bitterly
conflicted." 

 Through these special provisions in the temporary orders, the trial judge sought to
stabilize the situation and afford the children, as well as their parents, mental health
evaluation and treatment. By ordering the parties to submit themselves and their children
for psychological testing, evaluation, counseling, and treatment to Dr. Parham or any other
mental health care provider recommended by him, the trial judge, in effect, took the matter
out of the hands of the parties. He accomplished a similar result by ordering Nicole and
Jessie to fully cooperate with and follow Parham's or Bohanon's directives regarding the
"care, therapy, evaluation, treatment or referral for the parties [Nicole and Jessie] . . . 
or the children." We find a reasonable person could read the order and readily know what
duties and obligations were imposed upon her. The record also reflects that at the October
2000 hearings, the trial judge warned that he would jail any party who failed to keep the
mental health care appointments. We find the order is reasonably specific and capable of
being understood. Put simply, both phrases require the parties to do what the specified
health care providers convey to them should be done. Nicole cannot disobey the order
because she does not consider the order "fair." 

 Viewing the provision in question and the order as a whole, we conclude that the
temporary orders are clear and unambiguous. We overrule issue three.

 The petition for habeas corpus relief is denied. Our previous order granting bail
is revoked.

 WRIT DENIED.

 PER CURIAM

 

Submitted on January 2, 2002

Opinion Delivered March 14, 2002

Do Not Publish


Before Walker, C.J., Burgess and Gaultney, JJ.
1. The official transcript from the October 26, 2000, is not contained in the record.
However, both parties include the motion to enforce as an attachment to their pleadings
before this court. The enforcement motion quotes extensively from the hearing, and no
one says that the quoted portions are less than accurate. 
2. We note that Ms. Farmer is out on bail.