**ECTOR COUNTY, Texas, and Jack Crider, Tom Todd, and Bryan Henderson, Individually, Appellants,**

v.

**Robert HOLLMANN and J.A. "Jim" Bobo, Appellees.**

No. 08–94–00049–CV.

Court of Appeals of Texas, El Paso.

May 11, 1995.

---

C. Robert Heath, Austin, for appellants.

John Hoestenbach, Marc R. May, Odessa, Larry Zinn, San Antonio, for appellees.

Before BARAJAS, C.J., and LARSEN and CHEW, JJ.

## OPINION

PER CURIAM.

In this appeal, Ector County challenges the trial court's permanent injunction and declaratory judgment prohibiting the commissioner's court from reducing the salaries of Ector County's two county court at law judges. We reverse the trial court's judgment, order the injunction dissolved, and render judgment in favor of Ector County and its commissioner's court.

### LEGISLATIVE HISTORY

In its Points of Error Four and Five, Ector County complains that the trial court erred in refusing to consider tapes of legislative proceedings concerning the statutes at issue here. We agree that legislative history is relevant in construing a statute, and that the trial court should have considered it when asked to do so by a party. This appellate court is likewise entitled to consider legislative history whether it was considered by the trial court or not. TEX.GOV'T CODE ANN. § 311.023(3) (Vernon 1988); *City of Fort Worth v. Harty*, 862 S.W.2d 776, 778 (Tex.App.—Fort Worth 1993, writ denied). As the primary goal of statutory construction is to effectuate the intent of the legislature, we will consider the legislative history even though the trial court declined to do so. See *Harris County District Attorney's Office v. J.T.S.*, 807 S.W.2d 572, 574 (Tex.1991). We have reviewed the legislative history proffered by the county, and rely upon it in formulating our opinion in this case. Thus, the question of whether the trial court erred in refusing to consider the legislature's intent, as expressed in floor and committee debate, is moot. Points of Error Four and Five are overruled.

### STATUTORY SCHEME FOR SETTING COUNTY COURT AT LAW JUDGE SALARIES

In its Points of Error One through Three, Ector County challenges the trial court's declaratory judgment and permanent injunction prohibiting it from lowering the salaries of its two county court at law judges.[1] The trial

1. Throughout this opinion, the terms "statutory county court" and "county court at law" are

court's judgment, it urges, is based upon a flawed interpretation of the Tex.Gov't Code Ann. § 25.0005 (Vernon Supp.1995), and when the statute is read correctly, taking into consideration comments within the legislative history of the law, the County was fully within its discretion in decreasing the salaries as it did. Although we are wary of the potential for political hijinks inherent in the County's interpretation of the law, we conclude it is nonetheless the correct construction.

In 1991, the legislature passed House Bill Number 66, extensively amending the laws governing statutory county courts. Acts of October, 1991, H.B. No. 66, ch. 746, 72nd Leg., R.S. Among other changes, the amendments gave statutory county courts concurrent jurisdiction with district courts in most civil cases. The amendments, recognizing that now statutory county courts would be assuming burdens equal in many ways to those of a district court, also contained a scheme, voluntary with each county, for raising the salaries of county court at law judges to an amount near that earned by a district judge.

As an incentive for adopting the plan, the legislation authorized commissioner's courts to begin collecting additional fees through each county's statutory county courts. Tex. Gov't Code Ann. § 51.702 (Vernon Supp. 1995). The fees are sent to the state comptroller, who parcels out $25,000 per court to each participating county. Tex.Gov't Code Ann. §§ 25.0015, 25.0016 (Vernon Supp.1995). In return, the legislation requires counties to either raise the salaries of their statutory county court judges to within $1,000 of that paid a district judge, or raise the salary $20,000. Tex.Gov't Code Ann. § 25.0005. The law provides that the higher salary requirements do not apply, however, where a statutory county judge practices law, or (more importantly for this case) where the county court at law does not collect the § 51.702 fees. In other words, the legislature authorized the additional fees as an incentive for counties to increase the salaries

of statutory county court judges, and to provide a source of income for doing so.

### ECTOR COUNTY'S ACTIONS

Ector County has two statutory county courts. It opted into the system, and began collecting the extra fees in 1992. It also raised the salaries of its two statutory county judges an amount $1,000 per year less than a district judge. Fees collected statewide were less than anticipated, however, and the comptroller did not pay Ector County the full $25,000 per judge set out in the legislation. In 1993, the Ector County Commissioner's Court voted to cease collecting the fees, and to reduce the salaries of its statutory county judges.[2] The statutory county judges sued for a declaration that the act rescinding participation in the program was unauthorized, and asking for an injunction ordering commissioner's court to continue paying the increased salary. The district court granted the injunction, and entered judgment declaring that the government code prohibited the statutory county judge's salaries from being reduced and enjoined Ector County from reducing the salaries. This appeal follows.

### THE LEGISLATURE EXPECTED AN ANNUAL DECISION TO COLLECT FEES AND PAY HIGHER SALARIES

■ Appellant Ector County argues that the legislative scheme for equalizing judicial salaries contains corresponding incentives and responsibilities for participating counties. It contends that each county must decide on a yearly basis whether it wishes to participate in the plan. If a county opts into the plan, it must pay its statutory county court judges a higher salary. If it opts out of the plan, whether as an initial decision or at the end of any twelve-month period, it is no longer entitled to collect the fees and is no longer obligated to pay a higher salary. Appellees interpret the statute differently; he urges that once a county opts into the system, it must continue to pay the higher sala-

---

used interchangeably.

**2.** In 1991, an Ector County county court at law judge's salary was $48,000; in 1992, $86,000;

and in 1993, but for the injunction at issue here, the salary would have been $64,000.

ries even if it discontinues collecting the fees. After examining the legislative history of the statutes at issue, we conclude the county's interpretation is correct. It is clear that the legislature intended each county to opt in or out of the plan each year.

The legislative history of this bill includes the following remarks by Judge David Hodges, president of the Texas Association of County Court at Law Judges:

> Judge Hodges: And then today we will propose an amendment that we have discussed with the County Judge and Commissioners Association and Mr. Allison that will allow the county commissioners court to opt into this bill by enacting the court costs. And if they choose not to do so, then they will not be in the bill, will not be affected by the bill. Currently, a hundred and seven out of a hundred and sixty-eight, I'm sorry, a hundred and seven out of a hundred and seventy-six judges are already being paid the salary that's being set forth in here. So we're talking about sixty some odd other judges, who may or may not be affected by the bill. And as this amendment that's being proposed would reflect, they would only be affected if their county commissioners vote to opt into the bill under the amendment. And I'll let Mr. Allison speak to that also....

> .    .    .    .    .

> Senator Krier: And once they opt in, are they binding all future courts?

> Judge Hodges: No, it's the opt in provision is by the commissioners court, and its an annual basis.

Upon the committee's report on the bill to the full Senate, it was clear the Senate intended to adopt the optional salary structure outlined by Judge Hodges:

> Senator Dickson: I'm corrected, Senator Krier. You cannot opt out of the jurisdictional amount. You can opt out of the increased fees and payments of increased salaries to the judges.

> Senator Krier: OK. The jurisdiction would be statewide

> .    .    .    .    .

> Senator Dickson: That's the idea.

> Senator Krier: [B]ut they could opt out of higher fees, and they could opt out of higher salaries.

> Senator Dickson: That's right.

When the bill was discussed on the Senate floor on May 17, 1991, its sponsor, Temple Dickson, explained that it was intended to be an entirely voluntary plan:

> Senator Dickson: It would also permit, on an optional basis, counties to come into the system. They don't have to come into the system. They don't have to be into this uniform system. But there are some carrots that make them, that give them some incentive to get into it. That is, by raising the fees that are charged in their courts, they can raise the salaries of their county courts at law and receive reimbursement from the state to do that.

> Senator Krier had some concerns about the bill and its optional features. We've worked with the Legislative Council to make sure that it clearly, certainly, without any questions is optional, and that the counties don't have to get in it, that they can get out of it after they get in it—on a year-to-year basis.

> .    .    .    .    .

> Senator Krier: So I just want to be absolutely sure I can go back and assure [the Bexar County Commissioner's Court] that they have full range without any hidden catches, without sacrificing any other state funds or rights or remedies. Their choice is clearly if you charge the higher fees, then you have to charge the higher salaries. But if you elect to opt out of the additional fees, then you can set your salary as they are doing today. Is that correct?

> Senator Dickson: That is absolutely correct, Senator.

The legislature's intent in passing this bill is unmistakable: they intended the salary equalization plan to be optional with each commissioner's court, and they intended it to be an option that could be exercised annually. We therefore conclude that Ector County's

Commissioner's Court did not act outside its authority in deciding to abandon the salary equalization plan after trying it for one year.

Appellees make a strong public policy argument against this interpretation; he claims that the crucial role of an independent judiciary is jeopardized when a commissioner's court can raise and lower salaries at will, whenever a majority of commissioners find it personally or politically advantageous to do so. Although we believe this is a legitimate concern, there is no evidence in this record that the commissioners' motivations were suspect, and even if they were, the legislature clearly wished this decision-making power to be vested in each county. If the commissioners abuse that power, the ultimate remedy lies with the voters, who may elect a new slate of county officials.

Reviewing the language of the statute at issue, as well as its legislative history, we find the trial court wrongly interpreted TEX. GOV'T CODE ANN. § 25.0005 (Vernon Supp. 1995). The trial court's declaratory judgment and permanent injunction were therefore in error. We sustain Ector County's Points of Error One through Three.

### CROSS–POINT FOR ATTORNEY'S FEES

 In a cross-point, Judge Bobo complains that the trial court erred in failing to award him his attorney's fees under the Declaratory Judgment Action. TEX.CIV.PRAC. & REM.CODE ANN. § 37.009 (Vernon 1986). The trial court denied attorney's fees because "the only proper declaratory judgment Defendants are protected by sovereign immunity." It is true that since judgment was entered in this case, the Supreme Court has held definitively that governmental units are liable for attorney's fees under the declaratory judgment act. *Texas Educ. Agency v. Leeper*, 893 S.W.2d 432, 444–46 (1994); see also *City of El Paso v. Croom Construction Co., Inc.*, 864 S.W.2d 153 (Tex.App.—El Paso 1993, writ denied).

Because we have concluded that Judge Bobo was not entitled to a declaratory judgment, however, we likewise conclude he is not entitled to attorney's fees, even though sovereign immunity does not shield the coun-

ty in this situation. Judge Bobo's cross-point is overruled.

### CONCLUSION

We hold that TEX.GOV'T CODE ANN. § 25.0005 does not require a county to continue paying county court at law judges a higher salary if it chooses to discontinue collecting additional fees under TEX.GOV'T CODE ANN. § 51.702. We reverse and render judgment in favor of appellants Ector County and its county commissioners.