ACCEPTED
01-15-00583-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
9/24/2015 8:27:13 PM
CHRISTOPHER PRINE
CLERK

No. 01-15-00583-CV

In the First Court of Appeals at Houston, Texas

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
9/24/2015 8:27:13 PM
CHRISTOPHER A. PRINE
Clerk

THE HONORABLE MARK HENRY, COUNTY JUDGE OF
GALVESTON COUNTY,
*Appellant*

v.

THE HONORABLE LONNIE COX,
*Appellee*

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
9/24/2015 8:27:13 PM
CHRISTOPHER A. PRINE
Clerk

From the 56th Judicial District Court of
Galveston County, Texas, Cause No. 15CV0583

# REPLY BRIEF OF APPELLEE
# THE HON. LONNIE COX

Mark W. Stevens
TBN 19184300
PO Box 8118
Galveston, TX 77553
409.765.6306
Fax 409.765.6469
Email: markwandstev@sbcglobal.net
Counsel for Appellee The Hon. Lonnie Cox

1

# Contents

Authorities………………………………………………………………..…………3

Issues Presented……………………………………………………………..…………9

Nature of the Case…………………………………………………………..…………9

Trial Court Information……………………………………………………..…………9

Course of Proceedings……………………………………………………………….9

Trial Court Disposition……………………………………………………………...10

Facts…………………………………………………………………...…………..11

Summary of the Arguments…………………………………………………………20

Arguments and Authorities……………………………………………………..…..21

    "Mootness" (Responsive to Brief, p. 17)…………………………..…………21

    Subject Matter Jurisdiction (Responsive to Brief p. 20)……………..……….27

    Legislative Immunity (Responsive to Brief p. 24)……………………...…….29

    No "Indispensable" Parties (Responsive to Brief p. 27)…………..……….31

    Supervisory Jurisdiction (Responsive to Brief p. 30)…………...…………33

    The Bond, the Writ and Judicial Defiance (Brief, p. 37)…………………..36

    Irreparable Harm (Responsive to Brief, p. 45)……………………………..41

Conclusion……………………………………………………………………..42

Prayer…………………………………………………………………..…………42

Signature……………………………………………………………………43

Certificate of Compliance…………………………………………………………43

Certificate of Service ……………………………………………………..…44

# AUTHORITIES

## Cases

*Abbott v. Pollock*, 946 S.W.2d 513 (Tex. App.—Austin 1997, writ denied)……..3

*Andrade v. Venable,* 372 S.W.3d 134, 137 (Tex. 2012)………………………….28

*Associated Press v. Cook,* 17 S.W.3d 447
 (Tex. App.—Houston [1st Dist.] 2000, no pet.) …………………………………..30

*Astoria Industries v. SNF, Inc.,*  223 S.W.3d 616
(Tex. App.—Fort Worth 2007, pet. denied)……………….…..………………….24

*Bartlett v. Cinemark USA, Inc.,* 908 S.W.2d 229
(Tex. App.—Dallas 1995, no writ)………………………………………………….30

*Bay Fin. Sav. Bank v. Brown*, 142 S.W.3d 586, 590-91
(Tex. App.—Texarkana 2004, no pet.)……………………………………………39

*Bayoud v. Bayoud,* 797 S.W.2d 304, 312 (Tex. App.—
Dallas 1990, writ denied)…………………………………………………………….40

*Benavides Independent School District v. Guerra,* 681 S.W.2d 246
(Tex. App.—San Antonio 1984, *writ ref'd. n.r.e*.)……………………….…..35

*Bogan v. Scott-Harris,* 523 U.S. 44 (1998)…………………..…………….30

*Butnaru v. Ford Motor Co*., 84 S.W.3d 198 (Tex. 2002)……………………41

*Commissioners Court of Lubbock Co. v. Martin,* 471 S.W.2d 100
(Tex. App.—Amarillo 1971, writ ref'd. n.r.e.)…………………………………22

*Commissioners Court of Shelby County v. Ross,* 809 S.W.2d 754
 (Tex. App.—Tyler 1991, no writ)……………………………………………….35

*Cooper v. Texas Gulf Industries,* 513 S.W.2d 200 (Tex. 1974)……..………….31 ff

*Cozzo v. Tangipahoa Parish Council,* 279 F.3d 273 (5th Cir. 2002)………..…….30

*DaimlerChrysler Corp. v. Inman,* 252 S.W.3d 299  (Tex.2008)……………...…28

*District Judges of the 188th Judicial District v.*
*County Judge Gregg County, Texas,* 657 S.W.2d  908
(Tex. App.—Texarkana 1983, writ ref'd. n.r.e.)……………..……………………..22

*Diversified, Inc. v. Turner,* 650 S.W.2d 175 (Tex. App.—
Houston [14[th] Dist.] 1983, no writ)………………………………………………39

*Ector County v. Hollman*, 901 S.W.2d 687, 691 (Tex. App.—
El Paso 1995, no writ)………………………………………..…………..27

*Ector County v. Stringer,*843 S.W.2d 477 (Tex. 1992)……………………………..34

*Eichelberger v. Eichelberger,* 582 S.W.2d 395 (Tex. 1979)…………………...…23

*Ex parte Barnett,* 600 S.W.2d 252(Tex.1980)…………………….……………37

*Ex Parte Johnson*, 654 S.W.2d 415 (Tex. 1983)…………………………………33

*Ex Parte Lesher*, 651 S.W.2d 734 (Tex. 1983)……………………………...…39

*Ex parte Pryor*, 800 S.W.2d 511(Tex.1990)………………………………...…37

*Finance Commission of Texas v. Norwood,* 418 S.W.3d 566 (Tex. 2013)……….27

*Goodwin v. Goodwin,* 456 S.W.2d 885 (Tex. 1970)………………………...…38

*Guerra v. Brumlow,* 630 S.W.2d 425, 430 (Tex. App. –
San Antonio 1982, no writ)……………………………………….……………32

*Hays County v. Hays County Water Planning* Partnership,
106 S.W.3d 349 (Tex. App.—Austin 2003, no pet.)  ……………………....…….32

*Hughes v. Tarrant County*, 948 F.2d 918 (5th Cir. 1991)…………………………30

*Indian Beach Property Owners' Assn. v. Linden,* 222 S.W.3d  682
(Tex. App.—Houston [1[st] Dist.] 2007, no pet.) ………………………………..31

*In Re Mott*, 137 S.W.3d 870 (Tex. App.—Houston [1st Dist.] 2004)...............33

*In Re Reed,* 901 S.W.2d 604 (Tex. App.—San Antonio 1995)............…....……36 ff

*Intercontinental Terminals Co. v. Vopak N. Am., Inc.,*
354 S.W.2d 887, 899 (Tex. App.—Houston [1st Dist.]
2001, no pet.).……………………………………………….…………...…41

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992)……………………...……28

*Mays v. Fifth Circuit Court of Appeals,* 755 S.W.2d 78 (Tex. 1988)…………….25

*Minton v. St. Bernard Parish School Board,* 803 F.2d 129
(5th Cir. 1985)………………………………………………...…………………26

*Mokwa v. City of Houston,* 741 S.W.2d 143 (Tex. App.—
Houston [1st Dist.] 1987, writ denied)……………………………….………..34, 35

*Nueces County v. De Pena*, 953 S.W.2d 835 (Tex. App.—
Corpus Christi 1997, no pet.)…………………………………………………..32

*Randall County Commissioners Court v. Sherrod,*
854 S.W.2d 914 (Tex. App.—Amarillo 1993, no pet)……………………....….34

*Renfro v. Shropshire*, 566 S.W.2d 688 (Tex. Civ. App.—
Eastland 1978, writ ref'd n.r.e.)…………………………………………...………36

*Save Our Springs Alliance, Inc. v. City of Dripping Springs,*
304 S.W.3d 871 (Tex. App.-Austin 2010, pet. denied)…………………….…..28

*Rubin v. Gilmore*, 561 S.W.2d 231 (Tex. Civ. App.—Houston
[1st Dist.] 1977, no writ)…………………………………………………….......…31

*Schlafly v. Schlafly*, 33 S.W.3d 683 (Tex. App.—Houston
[14th Dist.] 2000, pet. denied)……………………………………………………32

*Spring Branch I.S.D. v. Reynolds,* 764 S.W.2d 16 (Tex. App.—
Houston [1st Dist.] 1988, no writ)…………………………………………………25

*Tuma v. Kerr County*, 336 S.W.3d 277(Tex. App.—
San Antonio 2010, no writ )……………………………………………………………28

*Vondy v. Commissioners Court of Uvalde County,*
620 S.W.2d 104 (Tex. 1981)……………………...…………….…………….……...29 ff

*Wilchester West Concerned Homeowners LDEF, Inc. v.*
*Wilchester West Fund, Inc.,* 177 S.W.3d 552
 (Tex. App.—Houston [1st Dist.] 2005, pet. denied)………………..…………31

*Wojcik v. Wesolick*, 97 S.W.3d 335, 340 (Tex. App.—
Houston [14th Dist. 2003, no writ)……………………………………….…33

*Williamson County v. Heckman,* 369 S.W.3d 139 (Tex. 2012)……………..……25

<u>Statutes and Rules</u>

Senate Bill (SB) 1913……………………………………….…………………..passim

Texas Local Government Code   Sec. 151.001, 152.004……………….….…28, 41

Texas Rule of Civil Procedure 39………………………...……………….20 ff

Texas Rule of Civil Procedure 66, 67..………………………...…………32

Texas Rule of Civil Procedure 67……………………………………………..32

Texas Rule of Civil Procedure 683…………………………………………..40 ff

Texas Rule of Civil Procedure 684…………………………………………..38 ff

Texas Constitution art. II, Sec. 1………………………………….… passim

Texas Constitution, art. V, Sec. 8………………………………….…passim

## Treatises

Annot. 59 A.L.R.3d 569, *Inherent Power of Court to Compel Appropriation or Expenditure of Funds for Judicial Purposes*......................................................................................3

## ISSUES PRESENTED

Reply Issue 1—The new amendments to Section 75.401 of the Texas Government Code do not make the Trial Court's Temporary Injunction Moot on appeal (Responsive to Appellant's Issue 1)

Reply Issue 2—The trial court's temporary injunction is not void because the trial court had subject matter jurisdiction under Tex. Const. art. V, Sec. 8, and any challenge to subject matter jurisdiction was waived in open court. (Responsive to Appellant's Issue 2).

Reply Issue 3—The trial court's temporary injunction is not void because the trial court validly exercised its supervisor jurisdiction under Tex. Const. art. V, Sec. 8.(Responsive to Appellant's Issue 3).

Reply Issue 4—The trial court's order is not void because it complied with the mandatory requirements for a temporary injunction under Rules 683 and 684.(Respnsive to Appellant's Issue 4).

TO THE HONORABLE FIRST COURT OF APPEALS:

## Nature of the Case

This case asserts the supervisory jurisdiction of the district courts over commissioners courts under Texas Constitution art.V, Sec. 8, and further the inherent power of courts of law to compel reasonable and adequate funding for court personnel. The TRO and Temporary Injunction were necessary to prevent Appellant from arrogating that power.

## Trial Court Information

The hearings below were conducted before the Hon. Sharolyn Wood, visitng by assignment.

## Course of Proceedings

There is presently pending before this court a parallel proceeding, i.e., Petition for Writ of Injunction, No. 01-15-00797-CV, *In Re Lonnie Cox*.

Before the instant lawsuit was filed, Appellee Cox issued an order of September 24, 2014, ordering Appellant Henry to restore Ms. Quiroga to her post as Director of the Department of Justice Administration. An Attorney General's opinion was requested on the issue of whether the judges or the commissioners could terminate or replace the director. All of the County Commissioners joined in an unsuccessful Mandamus action in the Court of Appeals (No. 01-14-00820-CV) and later before the Texas Supreme Court (15--00445).

9

Suit was filed when actins was threatened on June 9, 2015 to formally establish an alternate Justice Administration Department which would deprive the trial judges of control of those positions. The resulting temporary injunction order was not confined to the September 24, 2014 order of Appelle Cox, but also effectively implemented the inherent power of the courts to select judicial personnel and to have them reasonably funded by the Commissioners' Court.

## Trial Court Disposition

The trial court's temporary injunction restored the status quo by directing that Ms. Quiroga, who had already resumed her duties, be provided office space, equipment, and her previous salary from June 8, 2015. The trial court also made other distinct orders that no personnel of the Justice Administration Department should be relocated or reassigned.

## FACTS

### Duties and Selection of the Director

The duties of the Director were overwhelmingly judicial in nature. See, e.g,, PX-2, a job description posted shortly after the purported firing of Director Quiroga.

Appellant confuses funding with establishment or control of a position. There is no question that the position of Director was funded by the Commissioners court. However, in each instance the Director was nominated, i.e., selected, by the trial judges.

Because of Appellant's argument about the sanctity of the fiscal authority of the commissioners court, see below at p. 27, it is important to note that at no time did the trial court presume to determine what a reasonable salary is, was or should be. Instead, the trial judge simply directed that Ms. Quiroga be restored to the same salary or salary structure that she had determined her pay in July of 2014, Temporary Injunction, CR 239.

That salary structure was not determined by the trial judge—it was previously set by the commissioners court, and was never varied until Appellant Henry tried to reconstitute the duties of the Justice Department and the salary structure as a means of controlling the selection process.

There was no claim that Ms. Quiroga's salary was unreasonably high before July 24, 2014. Before that date, Appellant Henry had never recommended any change in her salary or duties. When "finalists" were being

11

interviewed by Appellant's staff, the same salary range was being discussed, any difference being due only to longevity factors. 3 RR 52. Before July of 2014, there had never been a perceived need to disestablish the department of Justice Administration.  3 RR 53.

At Brief p. 3, Appellant seems to invoke a  "waiver" argument ("…As the years went by…") and numerous organizational charts, as if  demonstrating a course of dealing or usage in trade proof . That effort was firmly  rejected by the trial court, along with the various organizational charts that purported to revoke the Texas Constitution. As the court stated later during arguments, *"I will tell you, I find that to be a spurious argument…."*  5 RR 40 (Judge Wood).

The request for an attorney general's opinion, DX-32, OCA Letter of September 23, 2014, appears to have been the inspiration for the  email that HR Director Peri Bluemer sent, moving  "forward" the finalist interviews to September 24—on one day's  emailed "notice. See PX -5, i.e., to "get the jump" on both the trial judges and any forthcoming AG opinion.

At p. 5, n. 3, Appellant states that the AG declined to issue a request "….due to the pendency of the mandamus petition."  The Brief fails to note that Appellant's  counsel filed a mandamus petition on October 8, 2014.  Then, on October 10, 2014, Appellant's counsel in the Mandamus proceeding sent a letter to the attorney general, advising of the recently filed mandamus proceeding and

suggesting in the final paragraph, first page, that the AG's office "…does not issue ….opinions on matters that are involved in litigation…" DX-39. That letter was not copied to Judge Cox or anybody else. Four days alter, the AG's office advised that in view of the pending mandamus, the requested opinion would not be issued. DX-40.

In response to the judges' suggested pay scale—and without notifying the judges-- Henry and the other Commissioners directed their "Chief of Staff" Tyler Drummond and "HR" Director Peri Bluemer to conduct a "study". The trial court (Temporary Injunction, CR 329, p. 5) found that Judge Henry had used a salary survey process which *"…was arbitrary and designed to orchestrate the salary of the replacement administrator for the courts at the lowest possible level, undermining the independence of the judiciary."*

That finding was well supported by the evidence. The trial judges were not consulted in screening some 143 applications for the post of director. When the judges were "invited to interview" the finalists, it was under such short notice and under such circumstances(during jury trial periods) as to virtually guarantee that the judges would not be able to attend. See, e.g., PX -4 (HR email of 9/22/14, stating that interviews might be in the following week) and PX -5 (HR email of 9/23/14, moving the "interviews" forward to the next day, September 24). It was

that attempt at a "done deal" that prompted Appellee Cox to issue the September 24 order.

The screening of the 143 applicants culled anyone with a hint of independent integrity. Excluded from consideration were two assistant district attorneys and one former judge—apparently because all had *valid* law licenses. (Judge Wood, 4 RR at 197—*"I heard-- **Valid** law licenses and not qualified."*)

One of the three "finalists" was an attorney who was under a probated suspension from the State Bar of Texas through the year 20**25**. PX-17 (State Bar Record). 4 RR 44; 4 RR 167-68. See Temporary Injunction, CR 329, p. 3, describing the vetting process as:

> "…eliminating applicants familiar with the Galveston County Courts and attorneys in good standing with the State Bar, while including a wholly unacceptable applicant who could not meet the standards of integrity necessary in such a sensitive position due to addition to drugs and whose license had been suspended by the State Bar."

Attempts at Negotiation (The "Workaround")

The attempts at negotiation in May of 2015 failed because Count Judge Henry and the other commissioners apparently felt that they were at liberty to accept one half of a settlement offer while rejecting the other half.

The three local administrative judges submitted a proposal (DX-44) on May 12, 2015, requesting a salary range for a modified Director's position of $85,000 to $120,000. That proposal would have taken some non-judicial duties out of Justice Administration and transferred them to the Commissioners Court and County Judge Henry.

The commissioners purported to accept the first half of the offer, but on condition that the judges agree to their reduced salary range. As noted above, that "range" would have reduced Ms. Quiroga's salary from about $113,000 annually to about $63,695—a 40% pay cut. Appellant's Brief, App. G.

Appellant's Brief, p. 10 asserts that the salary range adopted by the Commissioners was "Based upon a comprehensive analysis of other administrative positions in Galveston County and other counties…." The "analysis" was blatantly selective. For instance, one of the comparator jurisdictions was Cameron County, whose per capita annual income is about 46% that of Galveston County. 4 RR 29 (HR Director Bluemer) , PX -22 (Census Data). Moreover, Galveston has to meet the nearby competition and had lost a previous Director (Ed Wells) to

Harris County in Year 2000.  4 RR 35 (Cox Testimony; Wells left in 2000 and was succeeded by Ms. Quiroga).

In the course of closing arguments, the trial judge took particular notice of the use of Cameron County:

> They did not do themselves well with the witness and the position that Cameron County is an appropriate county with which to judge Galveston…Galveston is not Brownsville.

5 RR 53 (Judge Wood).

The mandamus, No. 01-14-00820-CV, was overruled without opinion  on February 4, 2015.  Appellant and the other county commissioners all joined in a Motion for Rehearing and Rehearing *En Banc*, which was denied on April 14, 2015.  Justice Massengale's opinion, concurring in the denial of *en banc* reconsideration, pointed out the obvious fact that there had been no hearing, evidence and no appealable order. Opinion Admitted as D-43.

After  denial of *en banc* rehearing of the mandamus (April 14, 2015), the Commissioners Court once again hired Attorney  James Allison  per the minutes of the commissioners court meeting of May 26, 2015.  DX- 56, page 8 of 12, to file a mandamus with the Texas Supreme Court and undertake other *litigation "…necessary to restrain interference [sic] of the district court in the lawful exercise of the Commissioners Court's authority." .*

On May 29, eight of the ten judges signed an order, DX 46, directing that Bonnie Quiroga return to work on June 8, 2015. That document was emailed to County Judge Henry on Friday, June 5. In immediate response, Appellant Henry first tried to get the elected sheriff of Galveston County, Henry Trochessett, to serve a "trespass" warning on Ms. Quiroga, an obvious prelude to having her arrested. See DX-19, Trespass Warning, signed by Appellant Henry "on behalf of the owner, Galveston County, Texas."

Next, Appellant Henry tried to get the District Attorney, the Hon. Jack Roady, to have Ms. Quiroga **prosecuted.** DA Roady declined, noting perhaps diplomatically that Ms. Quiroga would have an "affirmative defense" if such a case were bought. Testimony of Mark Henry, 3 RR 71.

Simultaneously, Judge Henry simply tried to lock Ms. Quiroga out. The "HR" director, Peri Bluemer, called the "facilities" department to have the lock to Ms. Quiroga's office changed on Friday evening, June 5. 4 RR 184. That call was made after 5:00 pm. 4 RR 189. Ms. Bluemer claimed that she had not been instructed to do so by anyone. 4 RR 185.

Next, Appellant Judge Henry sent his own "Order", dated [Sunday], June 7, 2015, with a declaration that:

> Judicial jurisdiction and power in this subject matter, if any, has attached and remains exclusively in this court as the court with **dominant jurisdiction**. The official actions of this Court

17

cannot be modified or amended by any Galveston County Court of **co-ordinate power, including any district or statutory county Court.** [Emphasis Added].

See and compare Tex. Const. art. V, Sec. 8.

County Judge Henry's June 7 "Order" concluded by declaring that:

(1)"Bonnie Quiroga is not an employee of Galveston County;
(2) State District Judge Lonnie Cox **did not have jurisdiction** concerning this mater to issue the September 24, 2014 Order and accordingly that order is void; and
(3) The eight district and county court judges who promulgated the May 29, 2015 "Notice concerning this matter **did not have jurisdiction** to enter any orders concerning this matter and accordingly, to the extent that the notice may be construed as an order, that Order is void." [Emphasis added]

Ms. Quiroga did report for work on June 8, accompanied by Judge Cox, District Judge John Ellisor, Probate Judge Kim Sullivan, and Sheriff Henry Trochesset. When they got to that office, however, they discovered that the lock had been changed. Sheriff Trochessett was able to open the door with his passkey. 4 RR 53-54.

Undeterred, Appellant Henry caused the locks to be changed **again** on the evening of Monday, June 8. 3 RR 80. As of the date of his testimony, June 21, that door was still locked. 3 RR 94. Appellant justified his actions in denying the

18

Sheriff a passkey because the building in question, the Galveston County Justice Center at 600 59th Street, was not the "Courthouse", which is at 722 Moody, i.e., the former courthouse. 3 RR 79.

The next day, June 9, Appellant was in a meeting with other commissioners from 1:30 p.m. to implement what would amount to the destruction of the Justice Administration as a department selected by and responsible to the judiciary, and would put a number of judicial functions directly under the control of the County "Judge", Appellant Henry. See Agenda, DX-49. The petition for TRO was filed near the noon hour. County Judge Henry was served with a TRO twice—the latter having a date properly affixed—and promptly ignored it. Because the TRO mentioned the "June 9" agenda, the same items were re-posted for the agenda of June 13—a step which Appellant took on "upon advice of counsel". 3 RR 87.

The TRO set a hearing date of June 19,2015. Appellant Henry and all other commissioners filed a mandamus petition in the Texas Supreme Court, No. 15—00445. That petition was denied by the Texas Supreme Court on the morning of June 19.

## Summary of the Arguments

This Court must exercise its inherent authority to punish defiance by elected judicial officials. County Judge Henry—as a subordinate judge—was directly bound by the Order of July 6, 2015. As such, he should either be disciplined by this court or referred back to the trial court for appropriate proceedings.

Recent amendments to Section 75.401 of the Texas Government Code do not support Appellant's claim that this appeal or the underlying case have become moot. Amended Section 74.401 cannot be constitutionally construed to give Appellant unfettered and arbitrary power to set compensation for those performing judicial duties.

The trial court's temporary injunction is not void because the trial court had subject matter jurisdiction.

The trial court's temporary injunction order is not void because the trial court validly exercised its general supervisory control jurisdiction under Tex. Const. art. V, Sec. 8. The trial court only reversed unlawful actions and only required the expenditure of funds at rates which had already been appropriated by previous commissioners, including Appellant himself.

Texas law no longer recognizes the concept of "indispensable" parties. Any objection under TRCP 39, dealing with parties needed for a just adjudication, was waived because the issue was not raised below by special exception.

ARGUMENTS AND AUTHORITIES

Mootness—Responsive to Brief p. 17

This case is not moot. The recent amendments to Section 75.401 only kick the "constitutional can" down the road.

Appellant's "mootness" claim is based on a mis-reading of SB 1913 and statutory construction principles. Appellant suggests that the phrase "set by the commissioners court" –read in isolation--confers unbridled authority to dictate to the judiciary by abusing the Power of the Purse. It does not.

Although SB 1913 clearly gives Appellee Cox and the other judges the power to establish the post of director of justice administration—by whatever name-- it does not give Appellant or the Commissioners Court the exclusive power to arbitrarily fix their compensation—or to rig compensation so as to control the selection process, as found by the trial court. Temporary Injunction, CR 329. It could not constitutionally do that.

SB 1913(d) as enrolled and passed states:

> A court administrator is entitled to reasonable **compensation as determined by the judges served** and in the salary range for the position*, as set by the commissioners court.*

Statutes must be construed to reach a constitutional result. Texas Government Code Sec. 311.021(1). The phrase "as set by the commissioners

court" can be read only to state the obvious-- that the commissioners court must be the entity which appropriates the funds and approves the vouchers.

The phrase is also constitutionally superfluous. Under the Texas Constitution, the commissioners court must approve all appropriations. But there are constitutional boundaries on the Power of the Purse. The commissioners may not arbitrarily withhold funding or set funding at unreasonably low rates. *Vondy v. Commissioners Court of Uvalde County,* 620 S.W.2d 104 (Tex. 1981); *District Judges of the 188th Judicial District v. County Judge Gregg County, Texas,* 657 S.W.2d 908 (Tex. App.—Texarkana 1983, writ ref'd. n.r.e.).

In *Commissioners Court of Lubbock Co. v. Martin,* 471 S.W.2d 100, 109 (Tex. App.—Amarillo 1971, writ ref'd. n.r.e.) the court held that the phrase "advice and consent of the commissioners court" did not give the Commissioners' court a veto over the judiciary:

> "….Thus, 'advice and consent of the commissioners court' demonstrably does not mean that the commissioners court could capriciously or arbitrarily ignore the appointment and setting up compensation for probation personnel by the district judge. To give that phrase converse meaning would nullify the authority given by the legislature to the district judges. The construction would render the commissioner's court the sole arbiter of the necessity for and appointment of probation personnel, if any it chose to approve, and the designation of their compensation contrary to the statutory

22

expression. Of course, the effect would be to render nugatory the express language of the statute.

471 S.W.2d at 108. The *Lubbock County* court continued:

> We have no doubt that a district judge has the implied power to
> appoint probation personnel **and set their compensation** in the event
> such action is essential to the continuing effective administration of
> the business of the court. But since we have sustained the actions of
> the defendant district judges on the basis of the constitutionality and
> construction empowering them to act, it is not necessary that we
> determine whether, under the facts in this case, the defendant district
> judges were or were not authorized to take the action they did under
> the implied powers of the judiciary.

471 S.W.2d at 110 [emphasis added].

*Lubbock County* was cited with approval in *Eichelberger v. Eichelberger,* 582 S.W.2d 395(Tex. 1979).

Judge Henry violated Texas Local Government Code Sec. 151.004 by firing Ms. Quiroga and then by arrogating to himself and his staff the selection of a successor. Judge Henry and his "staff" then compounded the harm by attempting to cut the judges out of the selection process, and flimflamed the system by a stacked salary review. As Visiting Judge Sharolyn Wood found:

> …Petitioner Cox has the probable right to recover relief in this suit in
> that Respondent Henry may not eliminate and attempt to control the

replacement of the administrator for the courts of Galveston County and, then, manipulate employment terms and applicants to replace the administrator  position to eliminate suitable applicants.

CR 239 at 240.

Appellant Henry also fails to read SB 1913(d) in connection with Government Code Sec. 311.016(4): the phrase, " 'Is Entitled To' creates or recognizes a right."  The words "or recognizes" are crucial in this context.  SB 1913 clearly recognizes and confirms the right of Ms. Quiroga or others in the service of the district and county judges to reasonable compensation—and cannot be read to allow the **arbitrary** setting of salaries  so low as to control the selection process.  See Temporary Injunction of July 6, 2105, CR 243,Page 4.

Beyond outright defiance of judicial orders,  this case is about Appellant Henry's attempt to game the system by denying reasonable compensation,  and "agreeing" to a salary schedule set artificially low in order to control the selection process.  Resolution of that  dispute resides with the trial court, which alone has fact-finding capacity, and is beyond the jurisdiction of this court in the context of a interlocutory appeal from a temporary injunction. See, e.g., *Astoria Industries v. SNF, Inc.,*  223 S.W.3d 616, 625 (Tex. App.—Fort Worth 2007, pet. denied)(jurisdiction limited to reviewing those portions of trial court's order subject to interlocutory appeal).

## Capable of Repetition Yet Evading Review

Even if SB 1913 somehow ended the current controversy—which it did not—the dispute in this case would be capable of repetition yet evading review, and thus not moot  *Spring Branch I.S.D. v. Reynolds,*  764 S.W.2d 16, 18 (Tex. App.—Houston [1st Dist.] 1988, no writ), i.e., where the challenged act is of such short duration that the appellant cannot obtain review before the issue becomes, in fact, moot.  The time span necessary for Appellant to rekindle this dispute is  72 hours, i.e., the required interval for posting a commissioners court meeting to pass a budget "amendment".   Nothing in the history of this case gives any assurance that such maneuvers will not be tried.

## Vindication of Constitutional  Rights

Texas courts now  recognize a  broader exception to mootness where cases must be heard to vindicate constitutional rights.  *Williamson County v. Heckman,* 369 S.W.3d 139, 148-49 (Tex. 2012).  This case directly  involves  the constitutional prerogatives of the trial judges, who  have a well established  right to select judicial personnel and to have them reasonably compensated by the the commissioners. *Vondy v. Commissioners Court of Uvalde County,* 620 S.W.2d 104, 109-10 (Tex. 1981), *Mays v. Fifth Circuit Court of Appeals,* 755 S.W.2d 78, 80 (Tex. 1988)(Spears, J., concurring),   Those rights are now statutorily recognized in SB 1913(d)("entitled to"), Texas Government Code Sec. 311.016(4,)

25

but are  challenged in this case by Appellant's attempting to "rig" the compensation structure so as to continue influencing the selection of highly inappropriate personnel.  Temporary Injunction, CR 239, 244, Para. 5:

> …the Drummond salary survey process was arbitrary and designed to orchestrate the salary of the replacement administrator for the courts at the lowest possible level, undermining the independence of the judiciary.

In *Williamson County v. Heckman, supra,*   the Texas Supreme Court stated:

> We adopt the federal exception to mootness for " inherently transitory" claims. As discussed above, Texas courts generally lack the authority to decide a case if it ceases to be " live" or if the parties no longer have a cognizable interest in the outcome of the case. However, we conclude that the " inherently transitory" claims exception, as described above, ensures that there remains a live interest between the class of affected individuals— thereby satisfying constitutional justiciability concerns. And, like the exception for claims that are " capable of repetition yet evading review," this exception also enables our courts to review claims of governmental deprivation of constitutional rights that might otherwise be unreviewable.

*Heckman, supra,* 369 S.W.3d  at 148-49.

The "live" class of affected individuals is much larger than the judges in Galveston County. It potentially includes many or all of the trial judges in Texas'

254 counties, all of whom sooner or later may lock horns with misguided or misadvised commissioners. The tale is an old one. See, e.g., *Vondy, supra* (refusal to set a constable's salary); *Mays, supra* (refusal to grant a statutorily mandated increase in court reporter fees); *Randall County Commissioners Court v. Sherrod,* 854 S.W.2d 914 (Tex. App.—Amarillo 1993, no pet)(DA complaining of commssioners' budget); Cf. *Ector County v. Hollman*, 901 S.W.2d 687, 691 (Tex. App.—El Paso 1995, no writ) (noting potential for "political hijinks").

Subject Matter Jurisdiction
(responsive to Appellant's Brief, p. 20 ff)

"Standing" of Judge Cox

Appellant argues that Judge Cox somehow lacks standing to enforce his own decrees or to exercise constitutionally conferred "general supervisory power" over the commissioners court, Tex. Const., art. V, Sec. 8. That argument puts standing-- so to speak—on its head:

> [T]he principle of standing exists to protect the separation of powers, not to defeat it. Standing operates to prevent the Judiciary from exercising authority that belongs to other departments of government, not to deprive the Judiciary of its role in interpreting law, especially constitutional law. The requirement of standing cannot be used to alter the separation of powers.

*Finance Commission of Texas v. Norwood,* 418 S.W.3d 566, 581 (Tex. 2013)

Appellant at pp. 22-22 relies too heavily, on *Tuma v. Kerr County*, 336 S.W.3d 277, 280(Tex. App.—San Antonio, 2010, no writ), for the proposition that Judge Cox needed to show particularized injury to seek relief. A plaintiff does not need to establish paritcicularized injury when standing is conferred by statute. *Andrade v. Venable,* 372 S.W.3d 134, 137 (Tex. 2012). Judge Cox' standing is even more fundamental—the Texas Constitution, art. V, Sec. 8, gives district courts (and thereby judges) "general supervisory control" over commissioners courts—and especially to correct violations of other law, e.g., Texas Local Government Code Sec. 151.004.

Judge Cox amply pleaded and proved "particularized injury" as that term is used in determining standing. "A plaintiff must be personally aggrieved; his alleged injury must be concrete and particularized, actual or imminent, not hypothetical." *DaimlerChrysler Corp. v. Inman,* 252 S.W.3d 299, (Tex.2008). The " irreducible constitutional minimum" of standing consists of three elements—injury in fact; causal connection, and likelihood that injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992); *Save Our Springs Alliance, Inc. v. City of Dripping Springs,*304 S.W.3d 871, 878 (Tex.App.-Austin 2010, pet. denied).

Director Quiroga was not the only party injured. Another distinct casualty was the constitutionally grounded ability of judges to select competent personnel and to have them adequately compensated, e.g., *Vondy, supra* and *Mays, supra,* and not to have a defrocked lawyer crammed down their official throats as a Director. The injury was directly traceable to the actions of Appellant Henry and others, and the controversy actually accelerated during those hearings, e.g., the "reassignment" of Deputy Clint Purcell,which threatened to derail the court' program of monitoring probationers and those on bond for drug and alcohol abuse. 4 RR 189-90.

The claim that Judge Cox had no "standing" would, if accepted, eviscerate Texas Constitution art. V, Sec. 8, which gives the district courts general supervisory power over commissioners courts. In rare instances, such as here, even *ex parte* or *sua sponte* orders may be justified. *Mays, supra*.

<u>Legislative Immunity</u>

<u>Responsive to Brief at p. 24 ff</u>

To assert "Legislative" immunity, a person must have been sued in his **individual** capacity. , *Camacho v. Samaniego*, 954 S.W.2d 811, 824 (Tex. App.—El Paso 1997, pet. denied); . *Minton v. St. Bernard Parish School Board,* 803 F.2d 129, 134 (5th Cir. 1985). At all times in this matter, County Judge Henry has been sued in his "official" capacity.

Furthermore, legislative immunity is an affirmative defense which must be pleaded or else it is waived. *Cozzo v. Tangipahoa Parish Council,* 279 F.3d 273, 283 (5th Cir. 2002). The Plea to the Jurisdiction, CR 78-92, discloses no such affirmative defense or pleadings.

Appellants claim of Legislative immunity fails under the two part test established in *Bogan v. Scott-Harris,* 523 U.S. 44, 46 (1998) and *Hughes v. Tarrant County*, 948 F.2d 918, 921 (5th Cir. 1991), generally applied by Texas Courts.

Legislative Facts—Under the first *Hughes* test, the inquiry is whether the facts relied on to reach a decision are "legislative facts", i.e., generalizations concerning a policy or state of affairs. If so, the act is legislative; if not, the act is administrative. See *Associated Press v. Cook,* 17 S.W.3d 447, 460 (Tex. App.—Houston [1st Dist.] 2000, no pet.); *Bartlett v. Cinemark USA, Inc.,* 908 S.W.2d 229, 236 (Tex. App.—Dallas 1995, no writ).

Impact of the Action—The more narrow the impact, the less likely an act will be "legislative" rather than administrative. If the action singles out specific individuals and affects them differently from others, it is administrative. *Associated Press v. Cook, supra*, 17 S.W.3d at 460; *Bartlett, supra,* 908 S.W.2d at 236; See *Hughes, supra,* 948 F.2d at 911. If an act merely enforces a preexisting policy, act or law, it is not legislative. In this case, the "firing" of Ms. Quiroga revoked the resolutions of about 15 earlier commissioner court salary authorizations, and the subsequent attempt to dismantle the Justice Administration department was an entire new—and constitutionally forbidden—agenda.

There Are No Longer "Indispensable"
Parties In Texas Procedure
(Responsive to Brief, p. 27)

The question of joinder of parties is not jurisdictional, and was waived by failing to bring the matter to the attention to the trial court.

The term "indispensable party" became largely obsolete when TRCP 39 was adopted, some 45 years ago:

> "One of the aims of the revised rule [39] was to avoid questions of jurisdiction….Contrary to our emphasis under Rule 39 before it was amended, today's concern is less that of the jurisdiction of a court to proceed and is more a question of whether the court ought to proceed with those who are present…. "

*Cooper v. Texas Gulf Industries,* 513 S.W.2d 200, 203-04 (Tex. 1974).

Compliance with Rule 39 is not jurisdictional, even in the context of a Declaratory Judgment Action, e.g., *Wilchester West Concerned Homeowners LDEF, Inc. v. Wilchester West Fund, Inc.,* 177 S.W.3d 552, 558-59 (Tex. App.—Houston [1st Dist.] 2005, pet. denied); *Indian Beach Property Owners' Assn. v. Linden,* 222 S.W.3d 682, 689 (Tex. App.—Houston [1st Dist.] 2007, no pet.)

Nor does Rule 39 affect deprive a court of jurisdiction in an injunctive proceeding. *Rubin v. Gilmore*, 561 S.W.2d 231, 233 (Tex. Civ. App.—Houston [1st Dist.] 1977, no writ), citing *Cooper*.

31

The structure of Rule 39 makes it clear that it must be asserted at the trial court level, or be waived.  See, e.g., *Guerra v. Brumlow*, 630 S.W.2d 425, 430 (Tex. App. –San Antonio 1982, no writ), citing both *Cooper* and TRCP 97. That feature prevents a litigant from simply "laying behind a log"—as in this case-- and then trying to claim non-joinder as a jurisdictional bar, and an appellate afterthought.

At Brief, pp. 29-30, Appellant sidesteps the waiver issue by implying that the "issue" of non-joinder had been raised.   However, the reason for the trial amendment  following the conclusion of evidence, CR 247, was simply to conform the pleadings to the evidence, which included events which occurred  during the hearings.  TRCP 66, 67.  See, generally,*Schlafly v. Schlafly*, 33 S.W.3d 683, 872 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) on improper and misleading briefing.

The cases cited at Brief, pp. 28-29 are inapposite.  *Hays County v. Hays County Water Planning Partnership,* 106 S.W.3d 349 (Tex. App.—Austin 2003, no pet.)  was an appeal from a final judgment of injunction.  The opinion dealt with whether the actions of one commissioner might be ascribed to the County, and determined that they could not.

*Nueces County v. De Pena*, 953 S.W.2d 835 (Tex. App.—Corpus Christi 1997, no pet.) merely held that the County Judge could not be ordered to attend an "apex" mediation, since the Judge had no independent settlement authority and the ADR statute provided no such authority.

As the court is aware, all commissioners joined in a mandamus challenging Judge Cox's original orders, 01-15-00820-CV, and all but one are clearly are aligned with County Judge Henry. Thus, the other commissioners are <u>virtually</u> represented by Judge Henry and need not be formally joined. See *Wojcik v. Wesolick*, 97 S.W.3d 335, 340 (Tex. App.—Houston [14th Dist. 2003, no writ)(Brister, J., concurring).

Finally, the defense of inability to comply is not a jurisdictional issue nor one that cannot be ordinarily resolved by an appellate court. "The time and place for testimony as to impossibility of compliance with the court's order is in the trial court where the matter is being considered." *Ex Parte Johnson*, 654 S.W.2d 415 (Tex. 1983); *In Re Mott*, 137 S.W.3d 870 (Tex. App.—Houston [1st Dist.] 2004)(orig. proceeding).

Given the current status of this litigation it is obvious that Appellant Henry has not even tried to comply, and is not going to.

The Trial Court Validly Exercised its Supervisory Jurisdiction
Under Texas Const. art. V, Sec. 8
(Responsive to Brief, p. 30)

Appellant paints a picture of a trial judge running amok, dictating *ex cathedra* what a reasonable salary should be and generally trampling on his constitutional turf.

That did not happen. The trial judge did not compute a "reasonable" salary out of whole cloth, as was the case in *Ector County v. Stringer*,843 S.W.2d 477 (Tex. 1992), where the trial arrived at a figure of $1,500 for past services.

The trial court simply preserved the *status quo ante* by ordering that Ms. Quiroga be paid the **same salary** that she made as of July of 2014. That salary structure (a) had been approved by the commissioners court for years; (b) approved by the same commissioners court for the 2014 budget; and (c) was the same salary structure that was discussed in September of 2014 with Ms. Quiroga's aspiring replacements, i.e., the demonstratively unsuited "finalists." 3 RR 24; 52-53.

See and compare *Randall County Commissioners Court v. Sherrod,* 854 S.W.2d 914, 918-19 (Tex. App.—Amarillo 1993, no pet.)(injunction of prior year's salary schedule maintained status quo). See, also, *Mokwa v. City of Houston,* 741 S.W.2d 143 (Tex. App.—Houston [1st Dist.] 1987, writ denied),

34

where the Court of Appeals reversed and rendered a judgment in favor of a police officer based upon previously adopted pay schedules. *Mokwa* was cited with implicit approval by the Texas Supreme Court in *Ector County v. Stringer, supra:*

> For example, in *Mokwa v. City of Houston....* a police officer sought to recover back pay from the city for services rendered in a job classification at a higher pay rate than her regular job classification. Id. at 143. The court in *Mokwa* stated that a trial court has jurisdiction to determine the amount of back pay due. Id. at 145. However, the principal issue in the case was entitlement to compensation at a pay level for a higher classification, **for which the amount had been previously established by the governing body.**

*Ector County v. Stringer*, *supra,* at 480 (emphasis added).

Cf. *Benavides Independent School District v. Guerra,* 681 S.W.2d 246, 250 (Tex. App.—San Antonio 1984, *writ ref'd. n.r.e.*)(back pay during period when parties were in negotiating stance preserved status quo).

The reasoning of *Hooten v. Enriquez*, 863 S.W.2d 522 (Tex. App.—El Paso 1993, no writ), cited at Petition, p. 16, actually supports Appellee with special force where the inherent powers of trial judges and the Separation of Powers under art. I, sec. 2 of the Texas Constitution are involved, noting that a district court may enjoin an act of a commissioner's court that is performed arbitrarily, capriciously, collusively, fraudulently, or in abuse of its discretion." *Hooten, supra,* 863 S.W.2d at 521.

*Cf. Commissioners Court of Shelby County v. Ross,* 809 S.W.2d 754 (Tex. App.—Tyler 1991, no writ)(commissioners may determine number of deputies to be appointed and their compensation, but have no absolute right to determine who shall be appointed); *Renfro v. Shropshire*, 566 S.W.2d 688 (Tex. Civ. App.— Eastland 1978, writ ref'd n.r.e.)(commissioners court has no right to screen applicants or to veto appointments made by the county clerk at various salary steps); *Abbott v. Pollock*, 946 S.W.2d 513 (Tex. App.—Austin 1997, writ denied)(Commissioners Court cannot terminate or appoint sheriff's office employee). See, generally, See, generally, Annot. 59 A.L.R.3d 569, *Inherent Power of Court to Compel Appropriation or Expenditure of Funds for Judicial Purposes.*

## THE BOND, THE WRIT—AND JUDICIAL DEFIANCE

(Resonsive to Brief, p. 37)

This is no ordinary case, but one in which a subordinate judicial officer has openly defied orders of judicially superior courts and has literally and explicitly claimed to be superior to those courts—in effect defying the "general supervisory control" established in Tex. Const. art. V, Sec. 8. See, *In Re Reed,* 901 S.W.2d 604 (Tex. App.—San Antonio 1995)(orig. proceeding), a district judge openly defied an order to cease a jury trial. That judge was sanctioned following evidentiary hearings:

This court recognizes that some of the procedures utilized in the present matter appear to be somewhat unusual. However, this court was faced with a situation apparently lacking in precedent--the refusal of a subordinate court to obey the direct order of a superior court..The action of Judge Reed--refusing to comply with an order of a superior court--is a proper subject of contempt because it is an act in disrespect of this court and which tends to bring this court into disrespect in the community. It is also an act in obstruction of the proper administration of justice in that it deprived this court of the opportunity to rule on the merits of a petition for writ of mandamus then pending before the court. If the act is contemptuous, it is the duty of this court to assert its independence and authority and to punish Judge Reed accordingly.

*In Re Reed, supra,* 901 S.W.2d at 611-12.

The Court of Appeals then went on to hold that such defiance of court orders by judicial officers provided its own remedy:

"The power to punish a party who fails or refuses to obey a prior order or decree of the court for contempt is an inherent power of a court and is an essential element of judicial independence and authority." *Ex parte Barnett,* 600 S.W.2d 252, 254(Tex.1980); *accord Ex parte Pryor*, 800 S.W.2d 511, 512 (Tex.1990).

*In Re Reed, supra*, 901 S.W.3d at 611.

County Judge Mark Henry was present with his counsel Mr. Ed Friedman on July 6, 2015 when the Temporary Injunction was read, corrected as to details, and

distributed. It was to County Judge Henry that District Judge Wood directed this warning:

> As an aside, I better not find out air conditioning has been cut off or the lights have been cut off.

6 RR 10-11.  The Appellant,  County Judge Mark A. Henry, has absolutely no excuse or defense as to any sanction that might befall him.

## Rule 684

Appellant Henry claims incorrectly that a bond was not filed, and then claims that for that reason  "The trial court's temporary injunction *order* is void…"Brief, p. 43.  (emphasis added).

Even if a bond were not filed—which it was—any such failure would at most void the temporary injunction and would not void the underlying order.  See, e.g., *Benavides Independent School District, supra,* 681 S.W.2d at 250:

> However, the fact that a bond was not posted affects only the validity of the issuance of the temporary injunction; it has no effect on the validity of the court's order which authorizes the injunction.

*Benavides* simply followed *Goodwin v. Goodwin,* 456 S.W.2d 885 (Tex. 1970)("…we are not to be understood as holding the injunction as issued under the amended order is invalidated or void."

Cases cited by Appellant do not support his "bond" argument. In *Ex Parte Lesher*, 651 S.W.2d 734 (Tex. 1983), the trial court had improperly waived a bond and no bond of any kind was posted. In *Diversified, Inc. v. Turner*, 650 S.W.2d 175 (Tex. App.—Houston [14th Dist.] 1983, no writ), the cited statement was arguably *dicta* or at best an alternative holding, since the injunction order itself did not meet the minimal requirements of specificity under Rule 683. Further, Diversified appears to have involved a surety bond ("injunction bond"), and not a cash bond. *Id*. at 177.

Appellant cites cases which involved **surety** bonds, which must of course be approved. However, this case clearly involved a **cash** bond, posted at the issuance of the Temporary Restraining Order, and subsequently approved by the trial court as security for the injunction. See, e.g., *Bay Fin. Sav. Bank v. Brown*, 142 S.W.3d 586, 590-91 (Tex. App.—Texarkana 2004, no pet):

> "[A]n order granting temporary injunction [must] fix the amount of security to be given by the applicant…A bond for a temporary restraining order does not continue on and act as security for a temporary injunction unless expressly authorized by the trial court."

39

That is precisely what happened in this case. See Temporary Injunction, CR 329 at 337. Cf. statements of Judge Wood, 6 RR ***.

It is not clear how one approves a *cash* bond. When counsel's check was posted on June 9, 2015, the District Clerk's office appears to have promptly "approved" it. See CR 61, certifying that the District clerk *"...in lieu of bond, therein, has deposited with me cash in the amount of $100.00 on June 9....."*

Once that bond was "approved," the Visiting Judge on July 6, 2015 properly applied it to the $100 bond set for the Temporary injunction.

Issuance of Writ Blocked by Appeal

Appellant notes that no writ was issued, and in that regard is in the position of one who, having asked for something, complains that he got it. *Bayoud v. Bayoud,* 797 S.W.2d 304, 312 (Tex. App.—Dallas 1990, writ denied).

The Notice of interlocutory appeal CR 334 and 335, was apparently filed with Appellant's Brief at Tab B, following page 5 (CR 333) of the trial court's Temporary Injunction. That may be because the Notice of Appeal was filed at 4:18 pm, just two minutes after the Injunction was hand stamped (See CR 329, upper right portion of the page) by the attending deputy district clerk.

If --as Appellant contends--the interlocutory appeal stayed all proceedings in the trial court, then it is difficult to see how the district clerk's office could have validly issued *any* further process.

## Rule 683

The only requirements for an injunction  to be effective are contained in Rule 683.  This Court has announced the governing standard:

> An explanation of the pending harm to the temporary injunction applicant, along with a specific recitation of the conduct enjoined, is all that is necessary to achieve Rule 683's purpose: 'to inform a party just what he is enjoined from doing and the reasons why he is so enjoined.

*Intercontinental Terminals Co. v. Vopak N. Am., Inc.,* 354 S.W.2d 887, 899 (Tex. App.—Houston [1st Dist.] 2001,  no pet.).

## IRREPARABLE HARM
(Responsive to Brief, p. 45)

The requirement of Rule 683 was amply met by the thorough injunction of Judge Wood.  In page after page, the trial judge specified how the independence of the judiciary was being subverted. Temporary Injunction, CR 329 ff.  There can surely be no more irreparable harm than in subverting public confidence in one of the three independent branches of our state government. See *In Re Reed, supra.*

Moreover, the related requirement of "no adequate remedy at law" is presumed to be met when a litigant seeks by injunction to enforce a statutory right. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 201 (Tex. 2002). This principle certainly must apply where both statutes, e.g., Tex. Govt. Code Sec. 151.001, 151.004 are being enforced, where the constitutional guarantee of separation of powers, Tex. Const., art. II, Sec. 1, and the supervisory control of the district courts under art. V, Sec. 8 are all at issue.

## Conclusion

County Judge Mark Henry is a retired military officer, 3 RR 5, who apparently can give orders but can't take them. From the beginning, his conduct has been an open challenge to the independence of the judiciary in Galveston County and, by malignant example, the rest of the State. Appellee Cox was well within his inherent power in issuing the challenged pre-trial orders, and the trial judge below was well within her constitutional duty in entering the order in question. The present state of this litigation confirms the need for firm judicial action.

## Prayer

It is therefore PRAYED that this Court AFFIRM the Orders below in all things, and remand this case to the trial court for further proceedings including but

42

not limited to (a) hearings as to the disobedience of Judge Henry of the Court's direct order of July 6, 2015; (b) hearings as to the complicity and culpability of other persons acting in concert with Judge Henry in regard to disobedience of the direct order of July 6, 2015; (c) hearings regarding the actions of Judge Henry to impede or obstruct the jurisdiction of this Honorable Court of Appeals; (d) hearings as to disobedience of Judge Cox's order of September 24, 2014 and subsequent; and (e) such other and further measures as may be necessary and constitutionally appropriate.

Respectfully submitted,

*Mark W. Stevens*

Mark W. Stevens

TBN 19184300

PO Box 8118

Galveston, TX 77553

409.765.6306

Fax 409.765.6469

Email: markwandstev@sbcglobal.net

Counsel for Appellee The Hon. Lonnie Cox

<u>Certificate of Compliance</u>

The foregoing instrument in relevant parts contains 7,109  words in Times New Roman Type, with text double spaced and quotes in 1.5 spacing .

*Mark W. Stevens*

Mark W. Stevens

<u>Certificate of Service</u>

The foregoing was efiled and e-mailed PDF to Mr. Edward Friedman on September 24, 2015 at efriedman@bakerlaw.com, and also to James P. Allison (j.allison@allison-bass.com) ; J. Eric Magee (e.magee@allison-bass.com); and Phillip Ledbetter (p.ledbetter@allison-bass.com) and N. Terry Adams, Jr. at the firm of Beirne Maynard Parsons LLP (tadams@bpmllp.com) .  An additional copy of this instrument has been served via email to Mr. Joseph M. Nixon at the firm of Bierne, Maynard & Parsons (jnixon@bpmllp.com) and to James P. Allison at j.allison@allison-bass.com.

*Mark W. Stevens*

Mark W. Stevens